**WYSS et al. v. BOOKMAN et al.**
**(No. 223–3370.)**

(Commission of Appeals of Texas, Section B.
Dec. 14, 1921.)

**1. Appeal and error ⟐═939—Presumed that transcript contains complete record.**

It must be presumed that transcript on appeal contains a complete record of the case, as the certificate recites.

**2. Stipulations ⟐═7—Valid agreement for judgment held not shown.**

Where parties, in open court, by their counsel announced the general terms of an agreement they had arrived at, and that they were preparing a statement of facts and a decree, which, when agreed upon by them, the judge would be authorized to enter as a judgment in the case, there was no such final agreement as would warrant the court in entering judgment.

**3. Stipulations ⟐═1—Agreement for judgment should leave nothing for adjustment.**

To constitute an enforceable agreement for judgment, there should be left nothing for adjustment between the parties relating to the subject-matter of the agreement.

**4. Stipulations ⟐═6, 9—Agreement for should be in writing or in record.**

Under District Court Rule No. 47 (142 S. W. xxi), court is without power to render a judgment by agreement until the terms thereof are either reduced to writing or placed of record.

**5. Stipulations ⟐═14(12)—Judgment by agreement must fall strictly within stipulations.**

Court is entirely without authority to enter any judgment by agreement other than that falling strictly within the stipulations of the parties.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by P. B. Bookman and another against Wm. Wyss and others. From a judgment of the Court of Civil Appeals (212 S. W. 297) affirming a judgment for plaintiffs, defendant brings error. Reversed, and remanded to the trial court.

A. J. DeLange, of Houston, Maco & Minor Stewart, of Galveston, and Thos. P. Buffington, of Anderson, for plaintiffs in error.

C. M. Spann and H. L. Lewis, both of Navasota, for defendants in error.

McCLENDON, P. J. This suit was brought in the district court of Grimes county by Bookman and Craig against one Thaman to recover upon three promissory notes, and to foreclose a vendor's lien securing them upon 1,125 acres of land in Galveston county. Thaman filed a formal answer, but did not otherwise appear, and judgment was entered against him upon trial for the amount

of the notes, and foreclosing the vendor's lien. This judgment, however, was set aside by the district court upon the application of the plaintiff upon the ground that other parties were interested in the land, and their rights and equities should be adjudicated. An amended petition was filed bringing in as defendants a large number of persons, and among them the defendants Wyss and others, who filed a joint answer and later appealed from the district court's judgment, and who are the plaintiffs in error in the Supreme Court. The answer of the defendants Wyss and others is very lengthy, and sets up numerous defenses to plaintiffs' action, not necessary to set forth here in detail. It may be stated generally that this answer claimed that Thaman was in fact an agent of the plaintiff in the sale of the land; that he platted it and had the plat placed of record, and had sold a large number of lots or blocks to various parties, and had paid over the proceeds to the plaintiffs; that the defendants were among the purchasers, and were entitled to have released the vendor's lien sought to be foreclosed. It was further claimed that, in a sale of property under foreclosure of the vendor's lien, the portions of the property which had not been sold by Thaman should be ordered sold first, and the other lots or blocks ordered sold in the inverse order of their alienation by Thaman.

At the May term, 1917, of the district court, which expired on July 28, 1917, judgment was rendered in favor of plaintiffs, by which they recovered the amount of the notes against Thaman, and the vendor's lien was foreclosed as to all defendants. The judgment also provided that certain portions of the property which Thaman had not conveyed be sold first, and that other lots enumerated in the judgment be sold in the inverse order of their alienation as disclosed by the judgment. This judgment appears from its recitals to have been entered upon trial on the 14th day of June, 1917. Motion for a new trial was made by defendants Wyss and others, which was overruled, and upon appeal the judgment was affirmed by the Court of Civil Appeals. 212 S. W. 297.

While in form one upon trial, the bills of exceptions, or, as they are styled in the record, statements of fact, show that, in so far as the defendants Wyss and others were concerned, the judgment can be treated only as one by agreement, and the question for our determination is whether the trial court had the power to render it. There appear in the record three documents, each of which is styled "statement of facts." The first of these, styled "plaintiffs' statement of facts," sets forth the various instruments which were offered in evidence. The second, styled "defendants' statement of facts," but referred to in the body as a bill of exception,

and approved with qualifications by the judge on September 8, 1917, is a recital of the circumstances under which the judgment was rendered, and the motion for new trial overruled. The third, styled, "district judge's statement of facts," and filed September 26, 1917, is a further recital by the judge of what took place in connection with the rendition of judgment and overruling of the motion for new trial, though somewhat more in detail than in the qualification to "defendants' statement' of facts," and recites that the parties plaintiff and defendant had each submitted a statement of facts, but that they were rejected, and this statement of facts was filed by him. It is recited in defendants' "statement of facts" or bill of exception that there was in fact no trial of the case; that the cause was regularly set for trial June 14, 1917, on which date counsel for plaintiffs and defendants Wyss and others sent word to the judge that they were in conference with a view of agreeing upon a statement of facts that should be submitted to the court, together with a draft for judgment that they might agree to be the law as applied to the facts; whereupon the court passed hearing the cause, and no further hearing was had except with relation to the motion for new trial on the last day of the term, July 28th; that counsel failed to agree upon the facts or upon a judgment; that about July 19th plaintiffs presented to the judge a draft of judgment, which the judge approved, in the belief that it had been agreed to by defendants' counsel, but that, in fact, it was not so concurred in; that this judgment was approved by the judge as of date June 14, 1917; that counsel for defendants made repeated inquiries of the clerk as to whether judgment was rendered, and were informed in answer to each inquiry that such had not been the case, and that they knew nothing of the judgment until the morning of July 28th, when one of defendants' counsel, a resident of Galveston, learned of the judgment through telephone conversation with one of the lawyers in the case representing other parties; whereupon he at once went to Grimes county and filed the motion for new trial. This statement of facts, or, more properly, bill of exception, was approved by the judge, with qualifications substantially the same, though in somewhat less detail, as the recitals in the judge's statement facts, filed some days later. The following is quoted from the latter statement:

"No evidence was introduced as to the parties above referred to who were cited and who appeared by their counsel, but the cause was set down for a hearing on June 14, 1917, the plaintiffs appeared in person, the above-mentioned defendants and all except the defendant Thaman who were cited personally, and all parties who were represented by Maco & Minor Stewart and by Judge Buffington appeared by their attorneys Barret Gibson and C. M. Mil-

heiser, of the said firm of Stewarts, and by Judge T. P. Buffington. Counsel for plaintiffs and for said defendants announced that they had about arrived at a settlement of the matters in controversy in so far as their clients were concerned, and asked for time in which to perfect the settlement. They were given time, and from time to time reported, until finally the said counsel each and all appeared in open court and announced that they had agreed upon the terms—a judgment—and announced the terms to the court. and they authorized the court to enter the judgment upon the agreement, and they said they would prepare a decree and submit same to the court for entry upon the minutes of the court.

"A decree was prepared by the plaintiffs' attorneys and submitted to me, together with letters and telegrams passing between attorneys for plaintiffs and defendants, and a decree submitted by counsel for defendants was shown me by counsel for plaintiffs. I approved the decree submitted by plaintiffs' counsel as being in accordance with the agreement, which agreement made in open court was that the plaintiffs should have judgment foreclosing their lien as set out in their petition against all of the defendants, the land to be sold in the inverse order in which same was sold by Thaman to the other defendants. There had previously been entered an interlocutory judgment against the defendant Thaman. The agreement further was that, upon payment of all costs by defendants holding 55 acres of the land, these defendants should have their lands free. There is no motion for new trial by defendant Thaman, and he does not complain of the judgment against him.

"Before I approved the judgment finally recorded I satisfied myself that the plaintiffs had executed a release as to the 55 acres of land to be delivered on payment of costs. These were executed, as I am informed, and no question has been raised as to their execution, they being tendered into court on the hearing on the 28th day of July, A. D. 1917, upon the effort to settle differences as to the terms of the judgment. There was only one difference in the two judgments tendered outside of the 55 acres, and that was this, that the judgment rendered by counsel for defendants provided for judgment over against Thaman, and I told Gibson I was perfectly willing to enter this if he would file a sufficient pleading and get a waiver from Thaman. He agreed that the judgment would be void unless he did so. This left only one point of difference in the two judgments, and that was the release of the 55 acres of land, which was to be done upon payment of costs as the agreement was made in open court, and as counsel now admits was the agreement. The costs had not been paid, and I had entered the foreclosure, but Judge T. P. Buffington made the agreement to pay the costs, and, as he is amply solvent, and I personally know will carry out his agreements, I, in open court, on July 28, 1917, at said hearing, told counsel for the defendants, that I would enter an order or judgment correcting the original judgment as to the 55 acres of land, and Mr. Gibson went off to prepare this judgment, but, instead of preparing it, prepared and filed the motion for new trial. I would gladly have corrected the only feature of the

judgment claimed by said counsel to be erroneous, and did offer to do so, and my offer was not accepted."

As we view the case, two questions are presented: First, whether there was any agreement in contemplation of law under which the judge was authorized to enter judgment; and, if so, second, whether the judgment entered conformed to such agreement.

District court rule No. 47 (142 S. W. xxi) provides:

"No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing signed and filed with the papers as a part of the record, or unless it be made in open court and entered of record."

[1-4] The purpose of this rule is evident, and its wisdom will be readily conceded. Agreements of counsel in the course of a judicial proceeding which affect the interests of their clients should not be left to the fallibility of human recollection. This is especially true with reference to agreed judgments which finally dispose of the rights of the litigants. If we give full force to the recitals by the judge in his own "statement of facts," it appears that the parties in open court, by their counsel, on June 14th announced the general terms of an agreement they had arrived at, and that they were preparing a statement of facts and decree which, when agreed upon by them, the judge would be authorized to enter as the judgment in the case. No record entry appears to have been made of this announcement, so far as the transcript shows, and we must presume that the transcript contains a complete record of the case, as the certificate recites. We think this announcement in open court fell short of a final agreement for judgment, in that it left open for agreement among the parties the terms in which the decree should be couched, and therefore was lacking in that finality which, to our mind, is essential to every agreement. To constitute an enforceable agreement for judgment, there should be left nothing for adjustment between the parties relating to the subject-matter of the agreement. Until all the terms of a final judgment have been definitely agreed upon by all parties and those terms either reduced to writing or placed of record, as required by the above-quoted rule, we think the court was without power to render a judgment by agreement. The only thing appearing of record was a judgment drafted by counsel for plaintiff to which counsel for defendants declined to give their full assent. The correspondence between counsel in relation to this draft is not in the record, but it appears clear from the judge's qualification to defendant's bill of exception, and from the judge's statement of facts, that there was at least one essential feature required by the defendant's counsel which was not embodied in the judgment as entered.

It seems, therefore, clear to us that the negotiations of the parties as entered of record never reached that final stage of meeting of minds upon all matters which is essentially necessary to an agreed judgment.

[5] Nor do we think the judgment as entered conforms even to the agreement which the trial judge recited the parties to have made in open court. In his statement of facts he clearly shows that there were 55 acres which should have been released from plaintiffs' lien under the stipulation made in open court under authority of which alone he acted in entering the decree. Just what 55 acres, and to whom they should be released, is not shown by the record, but it is clear that the stipulation of counsel required the release by decree of some 55 acres to some of the parties to the suit, and that this stipulation was not carried into the judgment. If it be conceded that an agreement made in open court, and not entered of record at the time, would be sufficient to authorize a judgment afterwards entered by the court, although over the protest of some of the parties, still we think it clear that the court would be entirely without authority to render any judgment other than that falling strictly within the terms of the stipulations. It was not for the court to determine whether the benefits to accrue from a particular stipulation might be had under some arrangement different from that stipulated. The powers of the judge, exercised by virtue of agreement of the parties, extend, we think, to entering only such judgment as was a literal compliance with the agreement. But, even conceding that defendants might not have ground for complaint, if the releases recited by the judge to have been tendered by plaintiff would give them every right which the judgment entered in accordance with the stipulation would have given them, the record does not show, either by recitation of the judge or otherwise, that such result was accomplished. The judge did not examine the releases, nor pass upon whether they in fact complied with the stipulation, but left in force the judgment as originally entered materially variant from the stipulation in open court.

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the former for further trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.