**AGEY v. BARNARD et al.**

No. 4946.

Court of Civil Appeals of Texas. Amarillo.

Nov. 28, 1938.

Rehearing Denied Jan. 9, 1939.

Willard J. King, of Henderson, and Newton P. Willis and John F. Studer, both of Pampa, for appellant.

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellees.

STOKES, Justice.

On the 13th of August, 1930, appellee, C. B. Barnard, and his wife, Elton V. Barnard, executed and delivered to Stewart L. Crebs, trustee, two oil and gas leases, one covering the south-half and the other the north-half of the northwest quarter of Section No. 24, Block No. 4, of the I. & G. N. Ry. Co. Surveys in Carson County. The leases contained the usual provisions for the development of the land, including a reservation to the lessors of ⅛th of the oil or gas that may be produced. The leases also contained a provision that they were furnished in accordance with the terms and conditions of a contract between the parties, a copy of which was attached to the leases and made a part thereof. The contract contained a provision to the effect that in the event the well to be drilled should produce oil or gas in paying quantities, the lessors were to be paid an additional sum of $5000 as consideration for the lease, this sum to be paid out of ⅞ths of the ⅞ths of the oil and gas conveyed to the lessee by the leases. It was further provided in the contract that if at the end of six months after completion the well should be producing or was capable of producing as much as fifty barrels of oil per day, then the lessors were to be paid the further sum of $2500, this latter sum likewise to be paid to them out of ⅞ths of the ⅞ths conveyed to the lessee by the leases.

The lessee Crebs began drilling a well on the south-half of the quarter section in 1930 and it was completed as a producing oil well on the 13th of March, 1931. The well was drilled by appellant, W. M. Agey, under a contract with the lessee, who was a resident of California, and in prosecuting the drilling operations, he incurred on behalf of the lessee a number of bills and accounts for material and supplies which had not been paid when the well was completed. After its completion appellant operated the well for some time during which, the oil market being unsatisfactory, he erected a small refining plant, which he operated in connection with the well, and, being unable to adjust the claims for material and supplies, or to induce the lessee Crebs to adjust them, appellant, sometime in 1932, turned the entire property over to appellee Barnard and went to California where he remained for several months. During appellant's absence, appellee continued to operate the well and refinery until the holders of the claims for materials and supplies became insistent upon payment of

their claims and caused the Texas Company, who was purchasing the oil, to cease paying to appellee the 5/8ths of the proceeds of production to which the lessee was entitled under the provisions of the lease. Being unable to operate the lease without the proceeds from the 5/8ths of the production, appellee, on the 3rd of January, 1933, filed in the district court of Carson County a suit, No. 670, against the lessee Crebs, appellant Agey, and a large number of other persons and corporations who held claims against Crebs for material and supplies furnished in the drilling operations, in which it was alleged that the lessee Crebs and the other defendants owning or claiming an interest in the lease, including appellant Agey, had abandoned the well and leased premises and refused further to operate the same. He further alleged, in effect, that by virtue of the abandonment, the lease and well had reverted to him and he was the owner of the entire premises. He alleged that the well was capable of producing and was producing under the proration rules in force at that time, approximately forty barrels of oil per day, and that by virtue of the clouds cast upon the title to the lease, he could not obtain from the purchasers of the oil the proceeds of the sale thereof, but The Texas Company, to whom the same was being sold, was holding up and refusing to pay to him the proceeds of the 5/8ths of the oil to which the lessee and those interested with him in the lease were entitled after deducting the 1/8th royalty interest and the 2/7ths of the remaining 7/8ths, and that they were paying to him only the 3/8ths of such proceeds to which he was entitled as the lessor and owner of the property under the terms of the leases, free and clear of the expenses of operating the well. He further alleged that he was without funds with which to operate the well pending the litigation, and prayed that a receiver be appointed by the court with power to collect the proceeds of the sale of the 5/8ths interest and to operate the well and pay to him his royalty interest and also the 2/7ths of 7/8ths to which he was entitled as consideration for the lease until he had been paid an additional sum of $5000 as provided in the contract attached to the leases, which amount he alleged he was entitled to, free and clear of any expense of operation of the well and to which amount he would be entitled regardless of the termination of the litigation. He prayed for judgment, decreeing the leases and liens fixed thereon by the claimants under the bills and accounts that had been incurred by the lessee and appellant to be null and void; for removal of the clouds cast upon his title by the claims of all of the defendants, and decreeing the title to him, free and clear of all such clouds and claims. He further prayed that all such sums of money as may be collected by the receiver be paid over to him, and for general relief.

On the 28th of December, 1932, the petition in Cause No. 670 was presented to the district judge who heard the same in Chambers and appointed B. O. Lilley receiver as prayed for in the petition. The order provided that the receiver take immediate possession of the leases and the well; that he should operate the well and produce therefrom the amount of oil the well was allowed to produce under the proration rules of the Railroad Commission; that he should sell the oil to the Texas Company or the Texas Pipe Line Company at the market price, collect the proceeds and pay to the plaintiff 1/8th of such amount. The order further provided that out of the balance, the receiver should pay the expenses of operating the lease, not to exceed $100 per month, including salary to one man to pump the well, but that he was to incur no other expenses without the further order of the court. The receiver was directed to return into court a full report of the condition of the property within fifteen days and to collect all amounts for oil runs since October 1, 1932, that were held by any purchasers of the oil.

On the 13th of June, 1933, some five and a half months after appellee Barnard filed his petition in Cause No. 670, appellant Agey filed in the same court another suit, being Cause No. 687, against the Texas Company, appellee Barnard and his wife, B. O. Lilley, receiver of the First National Bank of Pampa, and a large number of other defendants who were owners and holders of the accounts and claims against the property, which accounts had been incurred by Agey on behalf of Crebs in the drilling of the well and operation of the lease. His petition in this latter suit alleged the execution of the leases to Crebs, the drilling of the well and production of oil therefrom, and alleged that on April 4, 1933, the lease and all personal property

in connection therewith had been assigned to him by Stewart L. Crebs, the original lessee, and that the Texas Company had been taking the oil runs from the well "but has failed and refused to pay for ⅝ths of said oil, being the working interest therein, which is free and clear of any claim of the defendant, C. B. Barnard, which ⅝ths working interest up to and including the month of March, 1933, amounted to 9317.10 barrels of oil of the market value of $4,346.60", to which amount he alleged he was entitled. He further alleged that appellee, Barnard, under the terms of the lease, was to be paid $5000 out of the ⅞ths of the working interest, which amounted to ⅜ths of the whole amount of oil produced, and that he, plaintiff, was entitled to an answer from the Texas Company, showing the amount of oil it had procured from the ⅜ths working interest, as well as the amounts paid to the defendant, Barnard, therefor. He set up the nature and amounts of the various claims and accounts for material and supplies held by the other defendants in the case and that the defendants, Barnard and wife, together with some of the other defendants, were claiming some right, title and interest in the lease and oil produced therefrom; but that all of such claims were unfounded and constituted clouds upon his title to the leasehold estate.

In his petition in that case appellant prayed for judgment against The Texas Company for the $4346.60 alleged to be then owing by that company for oil purchased by it, the proceeds of which were being held up; that he have judgment for the value of the oil purchased by The Texas Company and run to the credit of the ⅝ths working interest since the month of March, 1933; that The Texas Company be required to pay the amount due for the ⅝ths working interest into the registry of the court, to be distributed and paid to him and any of the defendants who may be entitled thereto; that the claims and liens of the other defendants be cancelled, and the clouds cast upon the title to the lease thereby be removed, and for general relief.

The Texas Company filed its answer in the suit last mentioned, No. 687, admitting the purchase of oil produced from the lease and well involved, alleging that it was purchased under and by virtue of a division order or agreement executed to it on May 28, 1931, by C. B. Barnard and wife, Elton V. Barnard, and W. M. Agey, trustee, by which it was authorized to receive the oil from the well and give credit therefor in the proportion of ⅝ths of ⅞ths to W. M. Agey; ⅔ths of ⅞ths to C. B. Barnard and wife, and ⅛th to C. B. Barnard and wife. It further alleged that in compliance with the request for a report, contained in plaintiff's petition, it held and then had in its possession $4711.77, proceeds from oil purported to have been produced from the lease and which was attributable to W. M. Agey, trustee, from May, 1931, to July, 1933, in accordance with the division order above mentioned. It alleged that it was, and at all times had been, ready, willing and able to pay the amount of money suspended and in its possession, but it was unable safely to make payment of such proceeds on account of claims and liens asserted by other parties, and prayed that it be decreed to be a disinterested stakeholder and that it be protected from further liability as to any and all parties to the litigation. The Texas Company's answer was filed on the 29th of August, 1933, and on the 14th of September, 1933, it filed what it termed its bill of interpleader and motion for permission to deposit the money in court. By this latter pleading, it again set up the division order mentioned in its original answer, and alleged that the plaintiff, W. M. Agey, was claiming that he was the owner of ⅝ths working interest in the leasehold estate and therefore entitled to the proceeds of the oil purchased by it which represented that interest. It alleged its readiness and willingness to pay to the persons lawfully entitled to receive the proceeds of the ⅝ths of the oil and that it then had on hand $4622.21, which it desired to pay into the registry of the court to be decreed by the court to such person or persons as may be entitled to the same, and prayed for permission to do so.

On the 14th of September, 1933, the court then being in session, an order was entered in open court, authorizing The Texas Company to pay into the registry of the court the sum of $4622.21 being held by it as proceeds of the sale of the ⅝ths working interest, which sum the clerk was directed to receive and retain in a secure package in a safe or vault to be kept subject to the control and orders of the court.

At some time during the period covered by the litigation which we have detailed, a third suit, No. 674, and a fourth

suit, No. 686, were filed in the same court, the nature of which it is not necessary to notice. On the 14th of September, 1933, all 'four of the pending cases came on for trial and by order of the court they were consolidated and disposed of as one case under No. 687 in which appellant Agey was plaintiff, the final judgment reciting that the causes came on regularly for hearing and having been consolidated, came the plaintiff in person and by counsel and came The Texas Company and all of the other defendants; a jury being expressly waived by all parties, the matters of law and fact were submitted to the court, and the court having heard the pleadings and evidence introduced in open court and argument of counsel, was of the opinion and found that the defendants holding materialmen's liens and other liens upon the property were entitled to recover the various amounts found by the court and that The Texas Company had deposited in the registry of the court the sum of $4622.21. The decree provided that the liens of the lien-holding defendants should be transferred from the oil lease and property to the fund in the registry of the court; that the original lease, together with the contract attached thereto, was valid and subsisting as to the south-half of the quarter section and that it was owned by appellant, W. M. Agey, the title to that portion, together with the oil well and all personal property situated thereon, being decreed to him. The north-half of the quarter section was decreed back to C. B. Barnard and wife. The judgment contained the following provision which constitutes the basis of one of the material contentions made in the instant case, to-wit: "It further appearing to the court that C. B. Barnard is entitled to the sum of $1700.00 payable out of the funds deposited in the registry of the court to abide the result · of this suit; it is therefore ordered, adjudged and decreed that, out of said fund, the clerk of this court do pay to C. B. Barnard the sum of $1700.00."

After the litigation involved in all of the suits above mentioned was finally terminated, the suit now before us was filed by appellant, W. M. Agey, in the district court of Gray County. The record does not disclose the date upon which the original petition was filed but appellant filed his first amended original petition on the 25th of September, 1936. This suit was filed against appellee, C. B. Barnard, J. S.

Wynne, trustee, the First National Bank in Pampa, Sinclair-Prairie Oil Marketing Company, a corporation, and, Elton V. Barnard being dead, Harry Barnard, her surviving son, Eunice Lilley and Ama Graham, surviving daughters, together with their husbands, B. O. Lilley and M. A. Graham, were made defendants.

The Sinclair-Prairie Oil Marketing Company had been purchasing the oil runs since the conclusion of the Carson County litigation and it filed its answer as a stakeholder, admitting that it held the sum of $3940.73, which evidently was the proceeds from the purchase by it of the ⅝ths of the working interest referred to several times in the foregoing statement. It paid this amount into the registry of the court and it was agreed in open court that there was no further issue in the case as to that company.

Appellant alleged in the instant suit that he was the owner of the oil and gas lease involved in the former litigation on the south-half of the northwest quarter of Section No. 24 in Carson County. He set up the order of the district court of Carson County of September 14, 1933, in which appellee and his wife were cited to appear and assert their claims to the sum of $4622.21, proceeds from the sale of the ⅝ths working interest in the oil lease, which sum had been paid into the Carson County district court by the Texas Company and also set up the portion of the final judgment in the Carson County litigation, which decreed to him the oil and gas lease of August 13, 1930, on the south-half of the quarter section mentioned, and also the portion of that judgment decreeing to appellee Barnard the sum of $1700, payable out of that fund. He included in his petition a copy of the original lease on the 80 acres of land designated as the south-half of the northwest quarter of Section No. 24, together with a copy of the contract attached thereto which had been executed by C. B. Barnard and Stewart L. Crebs in connection with the execution of the original lease.

Further allegations were to the effect that the Carson County litigation had finally adjudicated that the well on the lease in question did not produce as much as fifty barrels of oil per day and that appellee was, therefore, entitled only to the sum of $5000 out of the 2/7ths of the ⅞ths working interest in the lease and that such litigation had further adjudicat-

ed that appellee, Barnard, had been paid the full sum to which he was entitled out of such fractional portion of the working interest by the decree to him of the $1700. He alleged, therefore, that since September 14, 1933, the date of the Carson County judgment, he was entitled to recover all of the money impounded and paid into the registry of the court by the Sinclair-Prairie Oil Marketing Company and, in addition thereto, he was entitled to recover of appellee, Barnard, the sum of $2164.47, which, he alleged, represented an overpayment by the pipe line company to appellee out of the oil runs since the date of the Carson County judgment.

These allegations were made upon the theory that the Carson County litigation had adjudicated the question of the amount of money appellee Barnard was entitled to receive as consideration for the lease, that is, the question of whether the well produced, or was capable of producing, less than fifty barrels of oil per day at the end of the first six months and he was, therefore, entitled only to $5000, or whether it produced, or was capable of producing, fifty barrels or more at the end of that period and he was, therefore, entitled to an additional $2,500, making $7,500 in all.

In their second amended original answer, in the instant case, appellees, among other defenses, specially denied and challenged the attempt of appellant to designate the item of $1700 decreed to appellee, Barnard, in the Carson County litigation, as a credit to appellant on the amount due appellees by him as compensation for the original lease. They alleged, in this connection, that while appellant, C. B. Barnard, did in fact receive the $1700 under the judgment of the district court of Carson County, the sum so received had no relation to the oil payment due him out of the ⅔ths of the ⅞ths of the production under the contract attached to the original lease, nor did the $1700 have any relation to the ⅛th royalty due appellee, Barnard, under the terms of the original lease. They alleged that, as a matter of fact, the decree of the Carson County district court was entered upon agreement of the parties to that litigation and, by such agreement, the $1700 was decreed to him solely for the purpose of recompensing him for actual expenses and personal services expended and rendered in the operation of the lease and the small refinery thereon for the benefit of appellant during the time appellant had abandoned the lease and was absent from it.

In his second supplemental petition appellant urged numerous special exceptions to the allegations of appellees above mentioned, all of which were overruled, and the action of the court in overruling them is made the basis of a number of appellant's assignments of error. The exceptions assert (a) that in so far as the $1700 item is concerned, the Carson County judgment shows upon its face that such sum was decreed as a credit upon the consideration to be paid appellee for the lease and could not be impeached by a collateral proceeding such as this. (b) That the pleading alleged the Carson County judgment was entered upon agreement of the parties in the face of contrary provisions of the judgment itself. (c) Because the pleading does not itemize any specific sum of $1700 that could have been recognized by the Carson County judgment as being expenses of appellee in operating the lease and well. (d) Because the pleading did not show that an agreement of the parties for entering the judgment was filed among the papers of the Carson County case as required by law. (e) Because appellees failed to allege any portion of the pleadings in the Carson County litigation which would support a judgment for expenses in operating the lease. (f) Because the pleading in this case did not contain allegations showing that the provisions of Articles 2177 and 2225, R.C.S., 1925, were complied with in making the alleged agreement for judgment in the Carson County case. (g) Because it was not alleged nor shown that the provisions of Rule 47 for district courts were complied with. (h) Because the pleading did not show that the pleadings in the Carson County litigation were in conformity to Article 2211, R.C.S., 1925, Vernon's Ann. Civ.St. art. 2211, nor that the purported agreement for judgment was not made prior to the institution of the suit in Carson County which is forbidden by Article 2224, R.C.S.

There were a large number of other special exceptions which are brought forward in the assignments of error which it is not necessary here to mention but which, with those mentioned, were entirely sufficient to raise the principal question in this case and constitute a basis for appellant's contention that the entire question of the $1700 item decreed to appellee Barnard in the Carson County judgment is res judicata and, therefore, cannot be litigated in this case.

The case was submitted to a jury upon special issues, in answer to which the jury found that at the end of the first six months period of its existence, the well was not producing fifty barrels of oil per day, but that it was capable of producing that amount. They further found that the judgment entered in the consolidated cases by the district court of Carson County was an agreed judgment; that the $1700 received by appellee under the terms of the decree in the Carson County litigation was not decreed to nor received by him as a credit upon the oil payment due him out of the ⅔ths of production, but that it was decreed to and received by him to compensate him for expenses and services in operating the lease. They further found that, while operating the lease, appellee, Barnard, received from the sale of oil to others than the pipe line company, the sum of $372, and it was shown, without dispute, that appellant had paid to appellee the further sum of $371.

The court entered judgment against appellant in favor of appellees for the total sum of $2459.87, stating in the judgment that it was the balance of the oil bonus payment of $7500 due appellees under the findings of the jury after deducting the sum of $4297.13 theretofore paid on the obligation from the proceeds of oil from the premises and sold to the Texas Company and after deducting also the two sums above mentioned of $372 and $371. The judgment was ordered satisfied out of the $3940.73 that had been deposited in the registry of the court by the Sinclair-Prairie Oil Marketing Company and the balance of the deposit directed to be paid to appellant after deducting the court costs.

Appellant filed a motion for judgment non obstante veredicto which, being overruled, he filed a motion for a new trial. The latter motion being overruled, he duly excepted and gave notice of appeal to this court and presents the case here upon a large number of assignments and propositions. The record is rather voluminous and a discussion of the assignments and propositions separately or in sections would extend this opinion to unreasonable lengths. What we shall have to say, however, will, we think, dispose of the principal contentions presented by the appeal.

In order to understand the contentions of the various parties and the basis of the conclusion we have reached with reference to the plea of res judicata and the exceptions and assignments of error pertaining thereto, it is necessary to analyze the respective conditions in which the parties placed themselves by the original oil and gas lease and the contract made by them at the time it was executed, which contract was attached to and made a part of the original lease. The lease provided for a consideration of ten dollars and other good and valuable considerations. It contained the provision that the lessor should be paid ⅛th of the proceeds derived from the sale of gas at the mouth of the well and that the lessee would deliver to the credit of the lessor, free of cost, in the pipe line to which he may connect the well, the equal ⅛th part of all oil produced and saved from the leased premises. The two latter considerations are what we shall designate as royalty. The contract attached to the lease contained a provision that in the event the well to be drilled should produce oil or gas in paying quantities, then, in addition to the royalty provided in the lease, Barnard should be paid, out of ⅔ths of the working interest, an additional sum of $5000, and if, at the end of six months after the well was completed, it should be producing or was capable of producing as much as fifty barrels of oil per day, the lessor should be paid out of ⅔ths of the working interest another additional sum of $2500. The contract contained no provision whatever with reference to the remaining ⅝ths of the oil or gas that may be produced, but left that portion of the production to be controlled entirely by the provisions of the lease. Thus it will be seen that, under the arrangement consisting of the lease and the contract, the entire production of oil from the well was divided into three separate funds or segments. First, ⅛th of all oil produced belonged to the lessor, Barnard, as royalty. Secondly, ⅔ths of the remaining ⅞ths which, incidentally, is the same as ⅞ths of the whole production, was designated as a fund out of which appellee, C. B. Barnard, was to be paid as consideration for the lease the sum of $5000 if the well to be drilled thereon should produce oil in paying quantities, and if, at the end of six months after the completion of the well, it should be producing, or was capable of producing, as much as fifty barrels of oil per day, appellee was to receive an additional sum of $2500, which was likewise to be paid to him from the proceeds of the sale of this same ⅞ths of the production, making a total of $7500 which

he was to receive from the proceeds of this ⅜ths if the well produced, or was capable of producing, as much as fifty barrels of oil per day at the end of the first six months period. Thirdly, the remaining ⅝ths of the production necessarily fell into a third fund or segment to which the lessee Crebs or his assigns was entitled in all events and without restriction or conditions of any kind.

Going back, now, to the Carson County litigation, we find that Cause No. 670, entitled C. B. Barnard v. Stewart L. Crebs et al., was a suit filed by Barnard to cancel the entire lease upon the alleged ground that it had been abandoned by the lessee. It had nothing to do with the fund designated as ⅜ths of the production as such, but affected that fund only in so far as it was necessarily affected by the allegations of abandonment and the claimed reversion to Barnard of the entire leasehold estate.

An inspection of the petition filed by appellant Agey in Cause No. 687 in the Carson County district court, and which was afterwards consolidated with Cause No. 670, will show that he was contending that the accounts and claims of the various defendants who had furnished material and supplies for the drilling of the well and the liens filed by them were not bona fide claims and did not constitute legal liens on the property. He prayed for judgment against The Texas Company for the full amount of $4346.60 which had accumulated and was being held by that company as proceeds of the purchase by it of oil runs from the fund designated by us as the third fund of ⅝ths of the production of the well. He also prayed for judgment against the Texas Company for the value of oil purchased and run by it to the credit of this ⅝ths interest since the month of March, 1933. He prayed that the liens and claims of the defendants holding accounts, claims and purported liens against the property be cancelled and annulled and that the cloud cast upon his title to the property by virtue thereof be removed and for judgment decreeing that the defendants, C. B. Barnard and wife, Elton V. Barnard, together with other named defendants, had no right, title, interest or claim in and to the oil and gas lease and personal property located thereon, nor the funds in the hands of the Texas Company who had been receiving and purchasing the oil runs. These allegations as to the appellees in this case obviously had reference to the conditions that had resulted from the alleged abandonment of the lease by appellant.

The two mentioned cases pending on the docket of the district court of Carson County, together with two other cases which seem to have been filed in that court, were all consolidated and disposed of as one case. The record in the case now before us does not reveal that the other two cases which we have not detailed raised any questions concerning the royalty interest or the ⅜ths interest which we have heretofore designated as the first and second funds provided by the lease and the contract attached to it. The record shows furthermore that during all of the time the Carson County litigation was pending, and subsequent thereto until the controversy involved in the instant case arose, the pipe line companies receiving and purchasing the oil runs from the well, were paying to appellee Barnard the ⅛th royalty provided by the lease and also the ⅜ths, designated by us as the second fund, which had been set apart by the contract as a fund from which the consideration of $5000, or $7500, as the case may be, should be paid to him. That fund or segment was never brought into question by any of the parties to the Carson County litigation. On the other hand, the controversy in all of that litigation involved only the reversion of the lease through the alleged abandonment and the third fund or segment of the production, viz., the ⅝ths working interest to which the lessee was entitled at all times in so far as the lease and contract are concerned. As far as the record before us shows, the second fund or segment consisting of ⅜ths of the production from the well was paid to appellee, Barnard, by the pipe line companies at all times before, during, and after the disposition of the litigation in the district court of Carson County, and there was at no time any controversy between any of the parties over that fund. For the first time in the history of all of the litigation between the parties, that fund was brought into question in the case now before us. In the instant case, appellant contends, in effect, that the well drilled on the premises was at all times a forty barrel well and was not capable of producing and did not produce as much as fifty barrels of oil per day at any time and that, by reason thereof, appellees are entitled only to the sum of $5000 out of the ⅜ths

segment of the production. He contends further that, out of the fund of ⅖ths, appellees have been paid the full consideration of $5000 and, in addition thereto, they have collected out of that fund $2164.-47, which represents an overpayment to them and for which he prays judgment against them. In order to make up and explain the amount which he alleges has been paid to appellees, he includes the item of $1700 decreed to appellee Barnard in the Carson County litigation. He contends that the question of how much appellees are entitled to receive out of the ⅖ths segment of the production was in dispute and included in the matters litigated in the Carson County cases and that the Carson County district court concluded in its judgment that the well was less than a fifty barrel well, and that appellees were, therefore, entitled only to $5000 as consideration for the lease. He contends further that it was also concluded in that judgment that $1700 would then make up the balance of the $5000 that had not theretofore been paid to appellees, and concludes, therefore, that, all such matters having been litigated in Carson County, they are res judicata and cannot again be litigated in the instant case. Appellees, on the other hand, contend the $1700 had nothing to do with the ⅖ths production fund nor with the consideration which they are entitled to receive under the terms of the contract, but allege that the $1700 was decreed to Barnard to reimburse him for expenses and to compensate him for his time expended in operating the lease during the time appellant was in California on the occasion when appellee alleged in his Carson County suit that the lease had been abandoned.

The question we are called upon to decide in this connection is whether or not the item of $1700 decreed to appellee Barnard in the Carson County suit was decreed to and received by him as consideration for the lease to which he was entitled out of the ⅖ths of the production from the well and the doctrine of res judicata is therefore, applicable here. The judgment in the Carson County suits does not reveal the reason why the court decreed to appellee Barnard the sum of $1700. The rule of interpretation is that the effect and legal consequences of a judgment must be ascertained from the provisions and language of the judgment itself where that is possible. If a satisfactory interpretation of the judgment cannot be determined from

its own provisions, then resort may be had to the entire judgment roll, including the pleadings in the case. Where the judgment is ambiguous or susceptible of more than one construction, that construction will be adopted which renders it more reasonable and effective in view of the pleadings upon which it is based. The Carson County judgment, standing alone and viewed from its four corners, is not ambiguous, but it does not reveal the basis of the decreed item of $1700. If it becomes necessary to ascertain the basis of that provision, the law directs us to the pleadings in the case. As we have shown, the pleadings in the Carson County cases were concerned with the question of abandonment of the entire leasehold estate and with the third segment or fund of the production consisting of the remaining ⅝ths of the oil produced from the well. The pleadings show that Barnard was contending the lease had been abandoned and he was seeking to recover the entire leasehold estate because of such abandonment. It is further alleged in that suit that during the period of the alleged abandonment, the ⅝ths fund or segment was being impounded or held up by The Texas Company who was taking the oil. This continued until the fund or proceeds from the sale of the ⅝ths of the production amounted to $4622.21, and the record shows this amount had been paid into the registry of the court. When the final judgment was rendered in those cases, the court had jurisdiction of that fund and, in the nature of things, it was imperative that it be disbursed and paid to those entitled to receive it. In the disbursement made by the court, $1700 was adjudged to belong to appellee, C. B. Barnard. Inasmuch as the pleadings in those cases and the record in this case clearly reveal that the fund then being disbursed by the Carson County district court consisted of funds and money entirely separate from those involved in the instant case, it is no concern of the parties to the present litigation whether or not the district court of Carson County had sufficient basis in the pleadings before him in those cases to authorize the decree to appellee of $1700. The court was then dealing with a matter which is entirely different from that here involved. No appeal was prosecuted from that judgment and we are not concerned in this case with any action, erroneous or otherwise, which may have been taken by the district court of Carson County in the former litigation. It

is sufficient for us to know that the matters, funds and controversy involved in that litigation had nothing to do with those involved here, and as we have stated, that information is clearly revealed by the record and pleadings in the Carson County cases. Royal Indemnity Co. v. Goodbar & Page, Tex.Civ.App., 48 S.W.2d 1021; Prince et al. v. Frost-Johnson Lbr. Co., Tex.Civ.App., 250 S.W. 785.

In the case of Philipowski v. Spencer et al., 63 Tex. 604, cited by appellant, the Supreme Court laid down the rule pertaining to res judicata, which has universally been followed by the courts of this state, as follows: "A matter is not generally regarded as res adjudicata unless there be a concurrence of the four conditions following, namely: 1st. Identity in the thing sued for; 2d. Identity of the cause of action; 3d. Identity of persons and of parties to the action; 4th. Identity of the quality in the persons for or against whom the claim is made."

Conceding that the third and fourth conditions named by the court in that case appear in the instant case, the first and second conditions are wholly absent and they are of equal dignity with the others. It plainly appears that, in the thing sued for, there is no identity in the Carson County litigation with that which is involved here, nor are the causes of action identical.

From what we have said, it is evident that we do not agree with appellant that the doctrine of res judicata applies in this case, and all of his assignments of error pertaining to that question are overruled.

The court submitted to the jury special issue No. 3 which required them to find whether or not the judgment in the consolidated cases in the district court of Carson County was an agreed judgment. The jury answered this special issue in the affirmative and much of the controversy revealed by the record is based upon the submission of this issue and the pleadings in regard to the manner in which the Carson County judgment was entered, to the effect that it was, as a matter of fact, entered as an agreed judgment. The assignments in this regard include also the testimony of appellee's witnesses concerning agreements, conversations and negotiations had out of court immediately prior to the entering of the judgment. These proceedings, in our opinion, constituted a collateral attack upon the judgment entered in the Carson County litigation. The judgment, considered alone, was not ambiguous in any sense whatever. It stated on its face that the consolidated case came on regularly for hearing and that the plaintiff in person and by counsel appeared and also came the defendants, either in person or by counsel, and all parties expressly waived a jury and submitted the matters of fact, as well as of law, to the court. It recited that the court, having heard the pleadings of the parties and the evidence introduced in open court, and the argument of counsel, was of the opinion and doth find as follows: * * *. After this recital it proceeds to dispose of the parties, issues and funds then before the court and in the registry of the court in a clear and concise manner. To attempt in the instant case to show by pleadings or proof that these plain statements of the court who tried the former litigation and rendered judgment therein were not true, but that the litigation was disposed of in a manner entirely different from that which is stated in the judgment itself, is clearly a collateral attack which is not permitted by the rules of practice in this state. Appellees presented numerous pleadings to the effect that, while the Carson County judgment stated upon its face that it was a trial in the ordinary concept, yet, as a matter of fact, it was entered by agreement of the parties to the litigation; was in all respects an agreed judgment, and the $1700 item decreed to appellee Barnard therein was to recompense him for expenses, time and labor in operating the lease and refinery during the absence of appellant therefrom. Appellant excepted to these pleadings and the exceptions being overruled, the court tried the issues presented by them and admitted testimony tending to establish the facts as pleaded by appellees. Appellant objected to the testimony and his objection being overruled, the issue was submitted to the jury and all these actions of the trial court are brought forward in the record by appropriate assignments of error.

Articles 2177 and 2225, R.C.S.1925, together with Rule 47 promulgated by the Supreme Court for the conduct of district courts, 142 S.W. xxi., make specific provisions for the manner in which agreed cases, confessed judgments and agreements between attorneys and parties litigant may be merged into judgments and, in our opinion,

it would be establishing a dangerous precedent to hold that a trial court has power to disregard the plain provisions thus laid down and avoid them by incorporating in its judgment recitations to the effect that it was rendered upon a contested trial of the issues in the case. If that could be done and parties to the litigation were afterwards permitted to attack such recitations and show that the judgment, while reciting it was rendered upon a contest of the issues, was, as a matter of fact, rendered upon an agreement of the parties, the solemn pronouncements of courts would indeed be reduced to a lowly status and their decrees and judgments deprived of that dignity, verity and stability which the orderly progress of society demands they should possess. Wyss v. Bookman, Tex.Com.App., 235 S.W. 567; Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97, 47 Am.St.Rep. 79.

We are of the opinion that the court erred in overruling the exceptions to the pleadings, objections to the testimony, and in submitting the issue to the jury because, as we have said, it all constituted an unwarranted collateral attack upon the judgment of the Carson County district court. We have shown, however, that the Carson County litigation, whatever it may have been, was not concerned with the identical matters and controversies involved in the instant case and that whatever may have been the nature of the proceedings in that court, they are immaterial here and have nothing to do with this litigation. However, we conceive no reason why the pleadings and the testimony relative to the manner in which the district court of Carson County arrived at its conclusions and entered its judgment would have affected the jurors in their considerations and finding upon the question involved in special issue No. 2. In their answer to that issue they found that, at the end of the first six months period, the well was capable of producing as much as fifty barrels of oil per day. That was the principal material question legally involved in the case and the finding of the jury is, in our judgment, supported by ample testimony. The actions of the court in overruling appellant's exceptions, admitting the testimony and submitting the special issues upon the questions surrounding the judgment of the district court of Carson County, while erroneous, were, in our judgment, harmless. Not having resulted in harm or detriment to appellant, they are not sufficient basis for a reversal of the case. Appellant's assignments of error in respect thereto are, therefore, overruled.

In their second amended original answer in the instant case, appellees included a cross-action in which they alleged that at the end of the first six months period after completion, the well drilled on the premises was capable of producing as much as fifty barrels of oil per day, or more, and that, by reason thereof, they were entitled to the full sum of $7500 as consideration for the original lease as provided by the contract attached thereto and made a part of it.

Under a number of assignments of error, appellant contends that the court erred in admitting evidence of these allegations because, he says, all matters pertaining to the capacity of the well were adjudicated and settled in the Carson County litigation. The contentions are based upon allegations of appellee, C. B. Barnard, in Cause No. 670, in the Carson County district court, to the effect that the well was capable of producing and was producing, under the proration rules in force and effect at that time, approximately forty barrels of oil per day and was then and had been a commercial well. He further alleged in his petition in that case that he was entitled to have a receiver appointed to take over the property, operate the well, sell the production, receive the proceeds thereof, and pay to him out of such amounts the $\frac{1}{8}$th royalty, plus an additional $\frac{2}{8}$ths, until he had been paid an additional sum of $5000 as provided in the contract referred to, which amount he alleged he would be entitled to regardless of the termination of the litigation then being instituted.

While it is true that Barnard did mention the proceeds of the $\frac{2}{8}$ths segment in his petition in that suit and that he did not contend there that he was entitled to more than $5000, yet, as we have stated in the preceding portions of this opinion, the suit instituted by appellee, Barnard, in the district court of Carson County was for recovery of the title to the oil and gas leasehold estate which he alleged had reverted to him by virtue of its abandonment by the lessee. He alleged that it had become necessary for him to take over the property and operate it. Controversies had arisen over the application which should be made of the third fund or segment of $\frac{5}{8}$ths of the production and The Texas Company was holding up payment for that segment. The allegations concerning the amount which the well was producing and the amount to

which appellee Barnard was entitled had reference to the allegations made by him concerning the alleged abandonment and his application for the appointment of a receiver. They did not constitute any part of that which was involved in the controversy. In fact, there was no controversy raised in the Carson County cases concerning them. They were incidental allegations, made for the purpose of explaining the basis of the material allegations of the petition concerning the alleged abandonment and the receivership. We do not think, under these circumstances, any respectable authority could be found under which appellees would be bound under the rules pertaining to res judicata by the incidental allegations made by the plaintiff Barnard in that suit. We conceive no merit in these contentions and they are overruled.

What we have said disposes of the material questions presented by the record. We have carefully examined all of the assignments of error and propositions urged by appellant and, being of the opinion that none of them presents reversible error, the judgment of the court below is in all things affirmed.