LIBERTY MUTUAL INSURANCE
COMPANY, Appellant,

v.

Armando AUYON, Appellee.

No. 04–85–00100–CV.

Court of Appeals of Texas,
San Antonio.

March 26, 1986.

Rehearing Denied April 18, 1986.

Aaron L. Jackson, San Antonio, for appellant.

Warren Weir, Robert Summers, San Antonio, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

ESQUIVEL, Justice.

This is an appeal from a judgment in a suit for damages against a third party by an employee arising out of a worker's compensation claim. *See* TEX.REV.CIV.STAT. ANN. art. 8307, § 6a (Vernon Supp.1985).

Appellee Armando Auyon (Auyon) brought a products liability/negligence action against appellee Blackwell Burner Company (Blackwell) alleging various defects in design and marketing of a roof sweeper that Auyon was using while injured in the scope of his employment for Alice Roofing Company. Appellant Liberty Mutual Insurance Company (Liberty), the worker's compensation carrier for Alice Roofing Company, intervened asserting its subrogation interest to the rights of Auyon against Blackwell for compensation benefits paid to Auyon in the amount of $30,049.00 and $22,492.40 paid for Auyon's medical expenses and hospitalization, for a total of $58,541.40. Prior to trial and selection of a jury the parties announced in open court that an agreement had been reached. The record reflects the following conversation on November 26, 1984, in open court between the attorneys and the court:

[Attorney for Blackwell]

MR. SUMMERS: First, the Defendant has made two settlements in the lawsuit. One, we have settlement with the Intervenor upon their representation that their medical and workers compensation benefits that they have paid to Mr. Auyon are $36,039 and $22,402.40 for a total of $58,541.40. And what we have done—and we have [sic] settlement will be for $40,978.98 with the Intervenor. And as result of that settlement there will be no further claims made by Liberty Mutual or the employer against my client, Blackwell Burner, Correct?

[Attorney for Liberty]

MR. BOONE: We are in agreement with that.

MR. SUMMERS: And, secondly, Your Honor, if you take that amount and subtract it from a hundred fifty thousand, that amount being $40,978.98, we have settled with Plaintiff for that amount which is—

MR. SUMMERS: The amount that Blackwell Burner has settled with Mr. Auyon is $109,021.02. Correct?

THE COURT: Are you Mr. Auyon, and did you hear the settlement that was dictated into the record.

[Attorney for Auyon]

MR. ALVARADO: He doesn't speak English.

THE COURT: Would you interpret for him.

[Discussion in Spanish]

MR. ALVARADO: Yes, he understands and he agrees with the figures that were presented to the Court.

THE COURT: All right. And, Mr. Weir, you are in agreement?

[Attorney Auyon]

MR. WEIR: Those are the correct figures, yes, Your Honor.

THE COURT: All right. Then the Court is going to approve the settlement, and you will bring in the judgment?

\* \* \* \* \* \*

The attorneys for Auyon then raised the matter of statutory attorney's fees. Over Liberty's objection they were permitted to offer proof of attorney's fees. The court then stated from the bench that it was going "to set the attorney's fees at 25 percent out of the intervenor's." On December 3, 1984, a hearing was held on Liberty's motion to reconsider and the court again announced it was going to enter judgment with the inclusion of attorney's fees. On January 8, 1985, the following judgment was signed and ordered by the court:

## JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

On November 26, 1984, the above styled numbered cause came on for trial before a jury. Plaintiff appeared in person and by through his attorney of record. Intervenor, Liberty Mutual Insurance Company appeared by and through its attorneys of record. The Defendant, Blackwell Burner Company appeared by and through its attorneys record.

THEREAFTER it was announced in open court that the Defendant, Blackwell Burner Company had settled with the Intervenor, Liberty Mutual Insurance Company for the total sum of $40,978.98. It was thereafter announced that Defendant, Blackwell Burner Company had settled with the Plaintiff for the total sum of $109,021.02. Thereafter, Plaintiff's counsel moved the court under the provisions of the Texas Workers Compensation Act for an award of attorney's fees of part of the $40,978.88 recovered by the Intervenor, Liberty Mutual Insurance Company. The court, after considering the evidence and the remarks of counsel is at the opinion that Plaintiff's counsel, Weir and Alvarado should be awarded the sum of $10,244.75, which represents twenty-five percent of Intervenor's recovery of $40,978.98. The court is further of the opinion that the court cost should be taxed against the Defendant, Blackwell Burner Company;

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that pursuant to the terms of the settled agreement approved by the court that Blackwell Burner make payments as follows: 1) to Liberty Mutual Insurance Company in the amount of $30,734.23. 2) to Weir and Alvarado, the amount of $10,244.75. 3) to the Plaintiff Armando Auyon and his attorney's Weir Alvarado, the sum of $109,021.02. 4) to the clerk of this court, the court cost incurred to date.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all relief not herein specifically granted and which could have been made the subject of this lawsuit is now hereby denied and no execution shall issue hereon, until it be shown to the court, that the sums

ordered paid herein, were not paid within a reasonable time.

IT IS NOTED that the Intervenor, Liberty Mutual Insurance Company objected and took exception to the courts award of $10,244.75 sum of Weir & Alvarado as attorneys' fees.

SIGNED AND ORDERED and entered this 8th day of January, 1985.

/s/ Rose Spector ·
JUDGE PRESIDING

It is from this judgment that Liberty presents us with two points of error on appeal.

 In its point of error one Liberty alleges that "the trial court erroneously rendered judgment that Blackwell Burner pay Liberty only $30,734.23, because that judgment did not comport with the party's agreement in open court, and because Liberty revoked its consent before the court rendered its judgment." Liberty argues that under the terms of the judgment of the court it is unambiguously reflected that the court was approving a settlement. However, Liberty further argues that the sum ordered by the court to be paid to Liberty was $10,244.75 less than the payment Liberty agreed to accept in open court. According to Liberty, the trial court's judgment does not comport with the agreement of the parties as announced in open court and it is therefore void. We agree with Liberty.

We hold that the judgment in this case is void in that it does not conform to the November 26, 1984, agreement reflected by the record. The judgment contains a provision for the payment of attorney's fees by Liberty to which it had not agreed. The accepted amount agreed to by Liberty and which was to be paid to Liberty as its share of the settlement agreement is substantially reduced by the judgment entered by the court. The judgment is therefore void.

The judgment having been entered by consent and agreement of the parties, the court was bound to enter a judgment strictly within the agreement of the parties. A final judgment based upon a settlement agreement reached by the parties must be in strict compliance with the agreement on which it purports to be based. *Wyss v. Bookman*, 235 S.W. 567, 569 (Tex. Comm'n App.1921, judgm. adopted); *Edwards v. Gifford*, 137 Tex. 559, 155 S.W.2d 786, 788 (1941); *Vickrey v. American Youth Camps, Inc.*, 532 S.W.2d 292, 292 (1976); *Grasso v. Ellis*, 608 S.W.2d 347, 349 (Tex.Civ.App.—San Antonio 1980, no writ).

We need not address Liberty's remaining contention and point of error. Our disposition of Liberty's initial contention of non-comportment is dispositive of this appeal.

The judgment is reversed and the cause is remanded to the trial court.