*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*


# MEMORANDUM OPINION

No. 04-10-00821-CV

Raymond Alexander **JUAREZ**,
Appellant

v.

**LAREDO INVESTMENT PROPERTIES, INC.** and Lisa Jacaman,
Appellees

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2008-CVQ-000494-D4
Honorable Oscar J. Hale Jr., Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:  September 21, 2011

REVERSED AND REMANDED

After an informal settlement conference, the parties entered into a settlement agreement. The trial court subsequently entered judgment based on the settlement agreement, but altered the terms in favor of appellees Laredo Investment Properties, Inc. and Lisa Jacaman.  On appeal, appellant Raymond Alexander Juarez raises four issues in which he contends the trial court erred in entering a final judgment that was not in accord with the settlement agreement.  We reverse and remand.

**BACKGROUND**

Juarez's daughter owned a business named Laredo Investment Properties through which she and Juarez built residential homes. Juarez handled the construction side of the business and his daughter handled the business side. In 2003, Juarez and his daughter brought Jacaman into the business. Juarez and Jacaman were in a romantic relationship at the time, and at some point were engaged to be married and living together. Ultimately, it was decided the business would be incorporated with Juarez's daughter and Jacaman as the sole shareholders. The incorporation was completed and the business became known as Laredo Investment Properties, Inc. ("LIP"). In late 2003, Juarez's daughter left the business; Jacaman became the sole shareholder. However, Juarez claimed he and Jacaman entered into a written partnership agreement by which he would share in one-half of all the profits and losses, and in return would use his expertise to build houses, hire subcontractors, and generally supervise the construction end of the business. Jacaman's duty was to obtain credit for LIP.

According to Juarez, in 2007, his relationship with Jacaman ended, and thereafter Jacaman began claiming she was the sole owner of the business, urging business contacts not to deal with Juarez. Juarez claimed Jacaman obtained the only copy of their partnership agreement and destroyed it. Juarez said Jacaman hired a locksmith to break into his personal safe, which was located in Jacaman's home. Juarez claimed that after the locksmith opened the safe, Jacaman removed the agreement, and destroyed it.

The parties' dispute over LIP escalated. Juarez filed a mechanic's and materialmen's lien on a home owned by LIP just days before LIP was to close a sale on the home. Juarez claimed he filed the lien to recover $30,000 owed to him by LIP under a verbal contract. Needless to say, the filing of the lien delayed the sale and allegedly resulted in increased costs to LIP.

Additionally, LIP claimed Juarez entered into contracts to sell properties owned by LIP, and that these sales were never authorized by LIP. Juarez allegedly removed "For Sale" signs on LIP properties and replaced them with his own signs. Based on the foregoing, LIP filed a declaratory judgment action against Juarez seeking declarations that: (1) the lien filed by Juarez was invalid; (2) Juarez has no authority to contract for or on behalf of LIP; (3) Juarez has no interest, title, or right in LIP or in properties owned by LIP; and (4) Juarez is not an agent, servant, principal, vice principal, employee, shareholder, owner, director, officer, or assign of LIP. LIP also brought claims for tortious interference with prospective business relations, theft, conversion, trespass, unjust enrichment, and failure to repay loans. In response, Juarez filed an answer in which he asserted a general denial, several affirmative defenses, and counterclaims against LIP and Jacaman for breach of fiduciary duty, breach of contract, fraud, and tortious interference with contract.

After two formal mediations failed, the matter was set for trial. However, less than a month before trial, Juarez filed a motion asking the trial court to conduct a settlement conference. Apparently with the agreement of LIP and Jacaman, the parties conducted an informal settlement conference on May 14, 2010, in which they reached an agreement. After reaching the agreement, the parties entered the courtroom and placed the terms of their agreement on the record in open court in front of the trial court. The following constitutes the terms of the parties' settlement agreement as entered on the record in open court:

- Juarez agreed to pay LIP $310,000 in exchange for LIP transferring to Juarez title to three properties;

- Juarez agreed to close on the three properties within sixty days of May 14, 2010, and agreed that during that sixty day time period he would pay the mortgages and any interest that accrued with regard to the properties, i.e., LIP was not to incur any additional expenses related to the three properties;

• Juarez agreed to pay the 2010 property taxes for two of the properties, and the parties agreed to prorate the taxes with regard to the third property;

• the parties agreed that during the 60-day period, Juarez was entitled to market the properties;

• the parties agreed to release their claims against one another: Juarez agreed to release all ownership claims to LIP and any property owned by LIP, and Jacaman agreed to release any claims she or LIP had against Juarez;[1]

• Juarez agreed to indemnify LIP for any claims brought against LIP based on contracts signed by Juarez; and

• each party agreed to pay its own costs, expenses, and attorneys' fees.

After the terms of the settlement agreement were dictated into the record, the trial court placed Juarez and Jacaman under oath, asking each of them if they had heard the terms of the agreement and whether they agreed to the terms. Each party responded affirmatively.

On July 8, 2010, LIP filed a "Motion for Entry and Enforcement of Settlement Agreement and Final Judgment." In that motion, LIP advised the trial court that it had heard nothing from Juarez with regard to his closing on the three properties, and that he had not paid the mortgages or the interest due on the properties. Then, on July 9, 2010, LIP filed what it termed its "First Amended Motion for Entry and Enforcement of Settlement Agreement and Final Judgment." Although styled as a motion for entry and enforcement of the settlement agreement, LIP was seeking to have the trial court enter a judgment different from the terms of the parties' settlement agreement. LIP asserted in the motion that Juarez had breached the terms of the settlement agreement by failing to make the mortgage and interest payments due on the properties, which required LIP to make said payments or face foreclosure. LIP asserted that as a result of Juarez's breach of the settlement agreement, it should not be required to sell the

---

[1] The only exception was claims Jacaman might have against Juarez relating to their former residence and items therein. The parties agreed such claims were outside the pending suit and outside the scope of the settlement agreement.

properties to Juarez, and LIP asked the court to declare that portion of the settlement agreement "terminated," but asked that the court still enforce the mutual release of claims. LIP did not file any further pleadings related to the alleged breach by Juarez.

After two more hearings, the trial court ultimately entered a final judgment. That judgment, however, was not in accord with the settlement agreement the parties dictated into the record in open court. Rather, in its judgment, the court found Juarez had breached the parties' settlement agreement by failing to make the interest payments on the properties and by failing to close on the properties within the 60-day time frame. The trial court rendered judgment that:

- Juarez has no title, interest, or ownership in LIP or any of its properties or assets;

- LIP is not required to sell the three properties to Juarez;

- Juarez must vacate the properties and tender possession of them to LIP, and shall not remove any fixtures or appliances from the properties;

- Juarez shall release and indemnify LIP and Jacaman from any suits, claims, damages, or losses relating to any claim wherein Juarez is identified as an agent, employee, or in any representative capacity for LIP or Jacaman; and

- all claims between the parties are released and dismissed with prejudice (except for those potential claims between Juarez and Jacaman relating to the Emerson property and its contents).

Juarez filed a motion for new trial, which was overruled by operation of law. Thereafter, Juarez perfected this appeal.

## ANALYSIS

In four issues, Juarez contends, in essence, the trial court erred in entering a final judgment that was not in accord with the parties' settlement agreement. We agree.

When the parties dictated the terms of their agreement into the record in open court, they entered into a rule 11 agreement. *See* TEX. R. CIV. P. 11. A settlement agreement satisfies the

requirements of rule 11 if it is made in open court and entered of record before the trial court renders judgment.[2]  *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995); *see* TEX. R. CIV. P. 11.  Once the parties enter into a valid settlement agreement under rule 11, the trial court may enter an agreed judgment based on the settlement agreement.  *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996); *Padilla*, 907 S.W.2d at 462.  However, if a party withdraws its consent to the agreement before judgment is rendered, the trial court may not render an agreed judgment on the settlement agreement.  *Id.*  Rather, the court may only enforce it as a written contract, but only after the party seeking enforcement pursues a breach of contract claim, following the normal rules of pleading and proof.  *Id.*  When such a dispute arises while the trial court still has jurisdiction over the underlying action, the breach of contract claim may be asserted under the original cause number.  *Mantas*, 925 S.W.2d at 658.  If, however, the trial court has lost jurisdiction over the underlying claim, the party seeking enforcement must file a separate breach of contract action.  *Id.* at 658-59.  A separate action must be filed because the settlement agreement is no longer capable of being entered as an agreed judgment because for an agreed judgment to be valid, consent must exist at the time the judgment is entered.  *See Padilla*, 907 S.W.2d at 461 (citing *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984)).

Although the facts of this case are unlike those in the *Padilla* line of case, i.e., there was no specific withdrawal of consent, LIP's and Jacaman's actions in asserting a breach of contract claim and requesting as relief a judgment based only in part on the settlement agreement were tantamount to a refusal to abide by the terms of the previously entered settlement agreement.  In their amended motion for entry and enforcement of the settlement agreement, LIP and Jacaman asked the trial court to alter the terms of the settlement agreement based on Juarez's alleged

---

[2] A rule 11 agreement is also valid if it is in writing, signed, and filed with the papers as part of the court record. TEX. R. CIV. P. 11.

breach of the settlement agreement. Given the factual scenario, we find it appropriate to look to those cases in which consent was withdrawn prior to entry of judgment based on a settlement agreement to determine whether the trial court erred in entering its judgment.

In accordance with *Padilla* and *Mantas*, we hold the trial court erred in rendering a judgment that differed from the settlement agreement based on LIP's and Jacaman's assertion that Juarez materially breached the settlement agreement. If LIP and Jacaman believed they were entitled to a judgment that differed from the terms of the settlement agreement because of Juarez's alleged breaches, they were required to pursue a separate breach of contract claim, which is subject to the normal rules of pleading and proof. *See Mantas*, 925 S.W.2d at 658; *Padilla*, 907 S.W.2d at 462. LIP and Jacaman failed to pursue a separate breach of contract cause of action. Accordingly, the trial court erred in rendering a judgment that was not in accord with the parties' settlement agreement. In the absence of a proper breach of contract action by LIP and Jacaman, and all the procedures attendant thereto, once the parties entered into a valid agreement, the trial court only had authority to enter such judgment as was in legal compliance with the parties' agreement. *Wyss v. Bookman*, 235 S.W. 567, 569 (Tex. Comm. App. 1921, jdgmt adopted; holding approved). We therefore hold the trial court entered the final judgment in error.

## CONCLUSION

Based on the foregoing, we hold the trial court erred in rendering a final judgment that differed from the terms of the parties' settlement agreement. In accordance with Juarez's prayer, we reverse the trial court's judgment and remand for further proceedings consistent with the court's opinion.

Marialyn Barnard, Justice