In the Matter of the MARRIAGE OF David N. BEAVERS and Lois D. Beavers.

No. 9403.

Court of Appeals of Texas, Amarillo.

Feb. 15, 1983.

Folley, Snodgrass & Calhoun, O.M. Calhoun, Amarillo, for appellant.

William R. McKinney, Jr., Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

DODSON, Justice.

In this action, David N. Beavers is the appellant and Lois D. Beavers is the appellee. The record shows that Lois filed an action for divorce on 5 September 1979. In November of 1979, David answered by a general denial. On 6 August 1980, David filed a cross-action for divorce. On 26 February 1981, the action was called for trial before the court without a jury. After both parties announced ready, Lois' attorney announced to the court that the parties had reached a settlement on the action. After hearing testimony from each party, the court rendered judgment in open court granting the divorce to Lois, approving the settlement, custody and support agreement of the parties and dividing the costs one-half to each party. The written judgment entered in this action was signed by the judge on 29 May 1981 and filed by the district clerk on 2 June 1981. David appeals from that judgment claiming that it does not conform to the parties' settlement agreement. After David had perfected his appeal and both parties had filed their respective briefs, Lois filed a motion to dismiss the appeal. Concluding that Lois' motion should be overruled and that in certain

aspects the signed judgment does not conform to the parties' settlement agreement, we reform the judgment and, as reformed, we affirm.

Lois' motion to dismiss presents our threshold determination. By her motion, Lois claims that David "is estopped to prosecute his appeal because he has accepted benefits under the Trial Court's judgment and is estopped to complain because he is treating the judgment as severable when in fact the judgment is inseverable." In her affidavit attached to the motion, Lois states, in part:

As a part of that case on appeal [i.e. the present case], my ex-husband and I agreed during the trial of that cause to resolve the dispute over our community property estate. As a part of that settlement, my ex-husband agreed to pay me $25,000.00 cash within thirty (30) days from the date of our agreement which was February 26, 1981. DAVID N. BEAVERS, pursuant to our agreement, did in fact, pay me that $25,000.00 within the thirty (30) days on approximately February 28, 1981. Pursuant to that agreement, I in turn relinquished exclusive use and control of our family owned businesses known as Beavers Parts and Machine Co., Inc. and Suit's Auto Supply Co. to my ex-husband, DAVID N. BEAVERS.

In his reply to Lois' motion, David admits that he complied with the parties' settlement agreement by paying Lois $25,000 in cash after the agreement was approved by the court on 26 February 1981.

The record reveals the following scenario. On 26 February 1981, the action was called for trial before the court without a jury. After each party announced ready, Lois' attorney announced to the court that the parties had reached a settlement in the action. The specific terms of the settlement agreement were developed in open court by the testimony of the parties. In regard to the property settlement agreement, Lois gave the following testimony:

Q. Have you and Mr. Beavers entered into a property settlement agreement?

A. That's right.

MR. McKINNEY: May it please the Court, may I recite the agreement into the record at this time?

THE COURT: Yes, sir.

After Lois had testified concerning the various items of property and the terms and conditions of the property settlement agreement, she gave the following answers in response to her attorney's questions:

Q. Can you think of any other items of property at this time that need to be considered by the Court?

A. I don't believe so.

Q. All right. You have considered this division of property to be a fair and just settlement?

A. Yes, sir.

Q. Are you asking the court to grant your divorce at this time?

A. Yes, sir.

On cross-examination by David's attorney, Lois stated:

Q. Mrs. Beavers, of course you have indicated you fully understand the settlement and the terms of it and you are agreeable to it?

A. That's correct.

Lois' attorney called on David to testify at the hearing. In response to questions by Lois' attorney, David stated:

Q. Now, without going into the specific details of the property settlement, you have heard Mrs. Beavers understanding of what the agreement is. Is that correct?

A. Yes.

Q. Is that your agreement?

A. Yes.

Q. Do you think it is a fair and reasonable settlement of the property issues before the Court?

A. I agree to it.

MR. McKINNEY: I believe I pass the witness.

Responding further to his attorney's question, David stated:

Q. Dave, I will ask you the same question that I asked Mrs. Beavers. Of course, you understand this is a final settlement between you?

A. Yes.

After the parties had completed their testimony and announced to the court that they had nothing further to present, the court made the following pronouncement in open court:

> THE COURT: The Court will enter its judgment granting the divorce to the Petitioner in this cause and embodying the [*sic*] approving the settlement, custody and support agreement of the parties and cost attached one half to each. Thank you very much.

■ The above record shows that the trial court rendered its judgment in this cause on 26 February 1981, after the settlement agreement had been presented to the court by the testimony of the parties and had been agreed to by the parties in open court. As stated by the court in *Samples Exterminators v. Samples,* 640 S.W.2d 873, 875 (Tex. 1982):

> 'A judgment is in fact rendered whenever the trial judge officially announces his decision in open court ... in his official capacity for his official guidance whether orally or by written memorandum the sentence of law pronounced by him in any cause.'

Furthermore, it is settled that when the court renders judgment on the parties' agreed settlement agreement, the signed judgment must literally comply with the terms of agreement, *Wyss v. Bookman,* 235 S.W. 567, 569 (Tex.Comm'n App.1921, holding approved); *Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d 292 (Tex.1976), because in that instance the court is merely exercising its ministerial function in recording what has been agreed to by the parties. *Sequin State Bank & Trust Co. v. Locke,* 129 Tex. 524, 102 S.W.2d 1050, 1054 (1937). Thus, from the law applicable to agreed judgments, the rule evolves that when the court renders judgment in open court on the parties' settlement agreement, the written judgment signed by the court must literally conform to the terms and conditions of the settlement agreement.

■ In the present case, by paying the $25,000.00 cash payment provided for in the parties' settlement agreement, David accepted the benefits accruing to him under that agreement and the judgment rendered thereon. In this regard, we acknowledge the principle that "a litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom." *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1004 (1950). However, that principle is not controlling in this instance. David's appeal is directed at the signed written judgment. He challenges that judgment because it allegedly fails to conform to the property settlement agreement. Thus, we conclude that by accepting the benefits of the parties' settlement agreement, David is not precluded from his appeal to conform the signed judgment entered of record to the judgment rendered in open court on the agreement. Accordingly, Lois' motion to dismiss David's appeal is overruled.

On appeal, David brings five points of error. His fifth point presents our second inquiry. By the fifth point, David claims the trial court erred in rendering judgment without the signatures of the attorneys and the parties because such signatures were required by the parties' agreement.

The record shows that after the court announced its decision from the bench the following dialogue occurred:

> MR. McKINNEY: Your Honor, Mr. Calhoun due to the nature in which the property is held, we propose to get together and prepare a judgment which may go into some more detail than the Court has heard it. I think we will have the parties sign it.
>
> THE COURT: I understand. Send that to me in Memphis.
>
> MR. CALHOUN: Also conveyances as well as transfer of stock. We will take care of all that, Your Honor.

David, in essence, contends that the above dialogue precluded the court from signing the 29 May 1981 judgment without the approving signatures of himself and his attorney. We agree. The above dialogue

does not establish an agreement that the written judgment would be signed by the parties and their respective attorneys. The dialogue, in fact, presents no more than hopeful expectations concerning proposed future action by the attorney. The record also fails to reveal any prior agreement by the parties that the written judgment would bear the approving signatures of the parties and their respective attorneys.

■ After having rendered judgment in open court approving the parties' settlement agreement, the court's remaining duty was to exercise its ministerial function by signing a judgment which literally complied with the terms of the parties' settlement agreement as stated, agreed to and approved in open court. *See Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d at 292; *Seguin State Bank & Trust Co. v. Locke,* 102 S.W.2d at 1054; and *Wyss v. Bookman,* 235 S.W. at 569. Thus, in the present case, we conclude that the trial court was duty bound to exercise its ministerial function by signing a judgment in this cause, even if that judgment did not bear the approving signatures of the parties nor their respective attorneys. David's fifth point of error is overruled.

The remaining points of error present David's challenges to the signed judgment dated 29 May 1981, by which he alleges that the judgment fails to conform to the parties' settlement agreement. By the first point of error, he claims that "the trial court erred in entering judgment that appellant [David] pay to appellee [Lois] the sum of $97,000.00 upon terms that were not agreed to by the parties by failing to treat said payments as 'contractual alimony' and subject to the income tax provisions of Sec. 71 of the Internal Revenue Code."

The trial court's signed judgment acknowledges that the parties "have entered into an agreement for division of their estate and that the agreement is just and right, having due regard to the rights of each party." The challenged provisions read, in pertinent part, as follows:

It is DECREED that the estate of the parties be divided as follows:

\* \* \* \* \* \*

8. Lump sum payment of $25,000.00 cash.

9. Respondent is to pay Petitioner $1,000.00 per month for six years beginning on or before the first day of January, 1982 and continuing each month thereafter until a sum total of $72,000.00 cash is paid to Petitioner by Respondent.

■ The terms of the settlement agreement were placed in the record by a series of questions and answers to the parties. Concerning the $25,000 cash payment and the $72,000 installment, Lois' testimony shows the following:

Q. In regards to cash, you are to receive $25,000 cash in thirty days.

A. That's right.

Q. You are to receive your personal property including your jewelry and then you are to receive $1,000 per month for six years beginning on or before the first of January, 1982, *which is to be deemed contractual alimony.* Is that correct? (Emphasis added).

A. That's right.

This is the only evidence in the record concerning the challenged payments.

Under the first point of error, David advances two contentions. First,. he claims that the court committed error by failing to treat the $25,000 cash payment and the $72,000 installment payment as "contractual alimony." The record, which is quoted above, shows that the parties agreed in open court that the $72,000 installment would be "deemed contractual alimony." However, the record fails to show a corresponding agreement concerning the $25,000 cash payment. As stated above, it is settled that "[a] final judgment which is founded upon a settlement agreement reached by the parties must be in strict or literal compliance with that agreement." *Vickrey v. American Youth Camps, Inc.,* 532 S.W.2d 292 (Tex.1976).

In the present case, the signed judgment, dated 29 May 1981, fails to comply with the agreement of the parties as to the $72,000 installment payment, by omitting the

phrase "which is to be deemed contractual alimony." Accordingly, we sustain David's contention as to the $72,000 installment payment provision, and, acting under Rule 435 of the Texas Rules of Civil Procedure, we reform that provision of the signed judgment dated 29 May 1981 to read as follows:

9. Respondent is to pay Petitioner $1,000.00 per month for six years beginning on or before the first day of January, 1982 and continuing each month thereafter until a sum total of $72,000.00 cash is paid to Petitioner by Respondent, *which is to be deemed contractual alimony.*

Under the first point, David further contends that the trial court committed error in the signed judgment because the parties agreed that the $25,000 cash payment and the $72,000 installment payment were subject to the income tax provisions of § 71 of the Internal Revenue Code. The testimony of the parties given in open court reveals no such agreement. David's second contention under the first point is overruled.

By his second point of error, David maintains the trial court erred in rendering judgment contrary to the agreement of the parties providing for monthly payments to be made to Lois, for the reason that such a requirement amounts to court-ordered alimony and is contrary to the laws of the State of Texas. Our disposition of David's first contention under the first point of error is dispositive of this point of error. *See McCray v. McCray,* 584 S.W.2d 279, 280–81 (Tex.1979). The second point is overruled.

David, with his third point, further maintains that the trial court erred in rendering judgment that the cash payments be secured by liens upon his real and personal properties because the parties did not agree to that provision and there is no evidence in the record showing that they did so agree. In this connection, the signed judgment provides that the real properties granted to David in paragraphs 1a, 1b and 1c are subject to a Deed of Trust in favor of Lois and that the personal property described in paragraph 1d is subject to a Security Agreement in her favor. By his fourth point of error, David also claims that the trial court erred in rendering judgment that he is obligated to pay "all debts and obligations incurred since the date of separation" because the parties did not agree to that provision and there is no evidence showing that they did so agree. Our review of the record reveals no agreement by the parties concerning the challenged provisions of the judgment. David's third and fourth points of error are sustained. Accordingly, the signed judgment dated 29 May 1981 is reformed by deleting the above challenged provisions from the judgment.

In summary, Lois' motion to dismiss the appeal is overruled. David's contention under the first point of error to the effect that the signed judgment omits the phrase "which is to be deemed contractual alimony" from the $72,000 installment payment provision of judgment is sustained and his remaining contentions under the first point of error are overruled. The second and fifth points of error are overruled, and the third and fourth points of error are sustained. Accordingly, the signed judgment dated 29 May 1981 is reformed as stated above and, as reformed, the judgment is affirmed.

Costs on appeal are adjudged one-half (½) to Lois and one-half (½) to David.