**In re Richard Allen KASSCHAU, Relator.**

**No. 14–99–00737–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 16, 1999.

Rehearing Overruled Feb. 14, 2000.

Linda Marshall, Houston, for relator.

Shawn Russel Casey, Houston, for respondent.

Panel consists of Justices YATES, FOWLER and FROST.

## OPINION ON REHEARING

KEM THOMPSON FROST, Justice.

Relator's motion for rehearing is overruled. The court's opinion of November 10, 1999, is withdrawn and this opinion is substituted in its place.

In this original proceeding, relator seeks a writ of mandamus directing the trial court to vacate two orders in the underlying divorce case: (1) denying reinstatement of an "original counter petition" for divorce, and (2) setting aside a mediated settlement agreement. Because the first order is not reviewable by mandamus and

the second order was not a clear abuse of discretion, we deny the writ.

## Background

Luckmi Kasschau ("Luckmi"), the real party in interest, sued relator, Richard Allan Kasschau ("Richard"), for divorce in the 312th District Court of Harris County. In her petition, Luckmi sought not only dissolution of the marriage, but also conservatorship and support of their two children and division of the community estate. Richard answered the suit with a general denial, a plea for confirmation of his separate property, and a request for reimbursement, attorney's fees, and expenses. The parties subsequently agreed to mediation. The parties settled all issues at mediation and the court approved the settlement.[1]

Before the court entered judgment, however, Luckmi nonsuited her divorce petition. Unaware of the nonsuit, Richard filed an "original counter-petition" for divorce. In his counter-petition, Richard sought enforcement of the mediated settlement agreement, denied paternity of the second child born during the marriage, and asserted various tort claims against Luckmi and Shivi Kumar Pawa ("Shivi"), the alleged father of the second child. Luckmi subsequently filed in the same court a new petition for divorce, seeking the same relief sought in her first suit. Luckmi also denied Richard's paternity of the second child and sought various temporary orders.

Meanwhile, back in the first suit, Richard filed a motion to reinstate his counter-petition for divorce and to consolidate the two divorce actions. He also asked the court to enter judgment on the mediated settlement agreement. Luckmi opposed the motion for judgment, asserting that: (1) certain conditions precedent to judgment had not been satisfied; namely, Shivi had not filed an intervention as contem-

---

1. The copy of the mediated settlement agreement provided by Richard is neither file-stamped nor signed by the court. Nevertheless, the reporter's record from a later hearing establishes that the court signed and approved the agreement.

plated by the settlement agreement, and (2) the settlement agreement was void because it required Richard to turn over certain audiotape recordings of Luckmi for destruction by the parties' attorneys, an act Luckmi claimed would be illegal. *See* Tex. Pen.Code Ann. §§ 16.02(b)(1), 37.09(a)(1) (Vernon 1994).

At a hearing on these motions, the trial court granted the motion to consolidate the two divorce actions based on its conclusion that Luckmi's nonsuit did not defeat the mediated settlement agreement. The court, however, denied Richard's motion to reinstate the counter-petition, finding that only Richard's claim for attorney's fees survived the nonsuit. The court withdrew its approval of the mediated settlement agreement, finding the agreement void and unenforceable because it required performance of an illegal act. The court put its first two rulings in writing by order signed the same day as the hearing.

After the hearing, Richard filed a request to enforce the terms of the mediated settlement agreement, except for the allegedly illegal provision. In the meantime, Shivi filed an intervention seeking to establish paternity, conservatorship and support of the second child. After the trial court signed an order setting aside the entire mediated settlement agreement, Richard filed this petition for writ of mandamus.[2]

## Mandamus

■ Mandamus relief is available if the trial court violates a duty imposed by law or clearly abuses its discretion, either in resolving factual issues or in determining legal issues when there is no adequate remedy at law. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A trial court clearly abuses its discretion by making an arbitrary and unreasonable decision that amounts to a clear and prejudicial error of law. *See Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). Richard complains the trial court violated a duty imposed by law by refusing to reinstate his counter-petition and declining to enter judgment on the mediated settlement agreement. We address each of these complaints and the question of whether Richard has an adequate remedy by appeal.

### Reinstatement of the Counter–Petition

■ Richard first contends the trial court violated a ministerial duty by refusing to reinstate his "original counter-petition," even though it was filed after Luckmi's nonsuit. Under Texas Rule of Civil Procedure 162, a plaintiff has an absolute, unqualified right to take a nonsuit before she introduces all her evidence, as long as the defendant has not made a claim for affirmative relief. *See BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 840 (Tex.1990); *General Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990); *Greenberg v. Brookshire*, 640 S.W.2d 870, 871 (Tex.1982) (per curiam). The trial court's refusal to grant a nonsuit in the absence of a defendant's claim for affirmative relief violates a ministerial duty and can be corrected by mandamus. *See Quanto Int'l Co., Inc. v. Lloyd*, 897 S.W.2d 482, 485 (Tex.App.—Houston [1st Dist.] 1995, orig. proceeding). Similarly, the trial court's reinstatement of a case after the court has lost jurisdiction because of a nonsuit may also be reviewed by

---

2. Luckmi objects to the documents included in the appendix to the petition. These were the only documents provided in support of mandamus relief. A petition for writ of mandamus must contain an appendix, which must include "a certified or sworn copy of any order complained of, or any other document showing the matter complained of." *See* Tex. R.App. P. 52.3(j). The orders of which Richard complains are included in the appendix and appear to be signed by the trial court, but are not file-stamped. The verification of Richard's counsel states only "that the pleadings contained in the appendix are true and correct copies." While the verification makes no mention of "orders, motions or other documents," we construe "pleadings" in this instance to include all the documents in the appendix.

mandamus. *See id.* (citing *Johnson v. Harless,* 651 S.W.2d 259, 260 (Tex.1983). Neither of these situations is present here.

▉▉▉▉ The trial court did not refuse to grant a nonsuit nor did it attempt to reinstate the case without jurisdiction to do so. Instead, the court merely refused to consider Richard's counter-petition for divorce. We can see no reason to remedy the court's ruling by mandamus rather than by an appeal. The requirement that a person seeking mandamus relief establish the lack of an appellate remedy is a "fundamental tenet" of mandamus practice. *See In re Masonite Corp.,* 997 S.W.2d 194, 199–201 (Tex. 1999) (J. Baker dissenting) (and cases cited therein). An appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining mandamus. *See id.* Although, on rare occasions, exceptional circumstances may justify mandamus relief despite the presence of a generally adequate appellate remedy, such circumstances do not exist when a trial court's ruling is merely incidental to the trial process and does not permanently deprive a party of substantial rights. *See id.* at 199–201. Furthermore, the mere fact that a trial court's erroneous order will result in an eventual reversal on appeal does not mean that trial will be a "waste of judicial resources." *See id.* Rather, mandamus should issue only in situations involving manifest and urgent necessity and not for grievances to which other remedies may apply. *See id.* at 198–99. Because Richard neglects to explain why the court's ruling on his motion to reinstate cannot be remedied by an appeal, we decline to address the court's ruling by mandamus.

### Judgment on the Mediated Settlement Agreement

Richard also contends the trial court violated a ministerial duty by refusing to enter judgment on the mediated settlement agreement. Sections 6.602(b) and 153.0071(d) of the Family Code state that "a mediated settlement agreement is binding on the parties if the agreement: (1) provides in a separate paragraph that the agreement is not subject to revocation; (2) is signed by each party to the agreement; and (3) is signed by the parties' attorney, if any, who is present at the time the agreement is signed." Section 157.0071(d) adds the requirement of "an underlined statement that the agreement is not subject to revocation." Finally, subsections (c) and (e) of these statutes provide that "a party is entitled to judgment" on a mediated settlement agreement that meets the above requirements "notwithstanding Rule 11 . . . or another rule of law."

▉▉▉▉ It is undisputed that the mediated settlement agreement in the underlying case meets the requirements of sections 6.602(b) and 153.0071(d). Relying on these Family Code provisions, Richard argues that Luckmi could not revoke her consent to the agreement by nonsuiting her divorce action and that the trial court violated a ministerial duty by refusing to enter judgment on the agreement. Citing the noted arbitration case, *Jack B. Anglin v. Tipps,* 842 S.W.2d 266, 271–73 (Tex. 1992), Richard also argues that without mandamus relief, he will be deprived of the rapid, inexpensive alternative to litigation provided by the Family Code. We need not compare mediated settlement agreements under the Family Code to arbitration agreements. Instead, we conclude that Richard lacks an adequate remedy from the trial court's ruling because he will be deprived of the settlement's benefits if forced to expend further time and resources litigating a suit that may have been settled. *See, e.g., Mantas v. Fifth Court of Appeals,* 925 S.W.2d 656, 659 (Tex.1996) (holding that relator who settled case on appeal lacked adequate remedy for appellate court's refusal to abate appeal pending suit to enforce settlement agreement); *see also Harris County Appraisal Dist. v. Johnson,* 889 S.W.2d 531, 533–34 (Tex.App.—Houston [14th Dist.] 1994, orig. proceeding) (man-

damus is appropriate to compel a district judge to proceed to trial and judgment).

[redacted] While we find the court's refusal to enter judgment on the mediated settlement agreement is a proper subject for mandamus, we conclude that the trial court did not violate a ministerial duty in this case. One of the two reported cases addressing section 153.0071 of the Family Code holds that subsection (e) requires the trial court to enter judgment on a mediated settlement agreement that meets the requirements of subsection (d). *See Alvarez v. Reiser,* 958 S.W.2d 232, 234 (Tex. App.—Eastland 1997, writ denied).[3] In *Alvarez,* the husband sued the wife for divorce. 958 S.W.2d at 233. The wife answered and filed a cross-petition for divorce. *See id.* At mediation, the parties reached a settlement agreement that complied with the requirements of section 153.071(d). *See id.* The trial court entered judgment on the mediated settlement agreement even though the wife had withdrawn her consent to the agreement. *See id.* The wife appealed and the appellate court affirmed, concluding that: (1) a party's unilateral withdrawal of consent does not negate the enforceability of a mediated settlement agreement that complies with section 153.0071(d), and (2) "a separate suit for enforcement of a contract [i]s not necessary." *Id.* at 234.

Here, the issue is not whether Luckmi could revoke her consent to the mediated settlement agreement, but whether the agreement itself was valid and enforceable. Notably, the lower court did not rule that Luckmi had revoked her consent to the mediated settlement agreement by taking a nonsuit. To the contrary, in consolidating the two divorce actions, the court expressly stated that Luckmi's nonsuit did not defeat the agreement. Instead of immediately entering judgment on the mediated settlement agreement, however, the trial court reviewed the agreement and concluded it was void.

[redacted] Neither the plain language of the Family Code nor the holding in *Alvarez* foreclose the court's action. First, as noted, sections 6.602 and 153.0071 of the Family Code provide that "a party is entitled to judgment" on a mediated settlement agreement if certain requirements of those statutes are met. Where, as here, the legislature has not defined the terms in the statute, we must apply their ordinary meaning. *See In re Clark,* 977 S.W.2d 152, 156 (Tex.App.—Houston [14th Dist.] 1998, orig. proceeding). "Entitle" means in part "to grant a legal right to or qualify for." *See* BLACK'S LAW DICTIONARY 553 (7th ed.1999). That a party has a "right to" judgment, or "qualifies for" judgment on a mediated settlement agreement does not deprive the court of discretion to review an agreement before entering judgment. Second, while *Alvarez* precludes a party from revoking consent to a mediated settlement agreement that complies with section 153.0071, it does not hold that the court's duty to enter judgment on such an agreement is ministerial. A court's duty to enter judgment on a settlement agreement becomes ministerial only after it has first rendered judgment on that agreement. *See In re Bland,* 960 S.W.2d 123, 124 (Tex.App. Houston [1st Dist.] 1997, orig. proceeding) (J. O' Connor dissenting) (citing *Dunn v. Dunn,* 439 S.W.2d 830, 832 (Tex.1969)); *see also In the Marriage of Beavers,* 648 S.W.2d 729, 732 (Tex.App.—Amarillo 1983, no writ). Here, the trial court approved the settlement agreement, but never rendered judgment on the agreement. *See, e.g.,S & A Restaurant Corp.* v. Leal, 892 S.W.2d 855, 857–58 (Tex. 1995) (holding that approval of a settlement does not necessarily constitute a rendition of judgment in the absence of a clear intent to render judgment). As a

---

3. *Spinks v. Spinks,* 939 S.W.2d 229 (Tex. App.—Houston [1st Dist.] 1997, no writ) is the only other reported case addressing section 153.0071. In that case, the court held that a party could revoke a mediated settlement agreement that did not comply with section 153.071(d). *See id.* at 230.

result, the court had no ministerial duty to enter judgment and thus, did not violate such a duty.

Notwithstanding this legal conclusion, the facts of the underlying case demonstrate that the parties did not intend for the court to immediately enter judgment on the settlement agreement. Specifically, the mediated settlement agreement expressly contemplates certain contingencies in connection with Shivi's intervention. It states that the court would likely require an intervention to resolve certain issues regarding the second child and that entry of a decree would be delayed, and agreed temporary orders entered while these issues were resolved. Thus, the facts of this case establish the trial court's discretion to review the agreement before entering judgment. Accordingly, we hold that the trial court did not violate a ministerial duty by refusing to enter judgment on the mediated settlement agreement.

### Legality of the Mediated Settlement Agreement

▬▬▬ Finally, Richard contends the trial court clearly abused its discretion by setting aside the entire mediated settlement agreement on grounds of illegality. "A contract to do a thing which cannot be performed without violation of the law" violates public policy and is void. *See Lewis v. Davis,* 145 Tex. 468, 199 S.W.2d 146, 148–49 (1947); *see also Montgomery v. Browder,* 930 S.W.2d 772, 778 (Tex. App.—Amarillo 1996, writ denied). The rationale behind the rule is not to protect or punish either party to the contract, but to benefit and protect the public. *See Montgomery,* 930 S.W.2d at 778; *see also Plumlee v. Paddock,* 832 S.W.2d 757, 759

(Tex.App.-Fort Worth 1992, writ denied). Because of the presumption in Texas that contracting parties are knowledgeable of the law and contract accordingly, courts will generally leave the parties as they find them. *See id.* Thus, "where the illegality does not appear on the face of the contract, it will not be held void unless facts showing its illegality are before the court." *See Lewis,* 199 S.W.2d at 149. Here, the trial court concluded from the facts before it that the settlement agreement called for the performance of an illegal act. *See* Tex. Pen.Code Ann. § 16.02(a)(1) (Vernon 1994) (" a person commits an offense if he intentionally intercepts . . . a wire, oral, or electronic communication").

At the hearing on Richard's motions, the court heard uncontroverted testimony that Richard secretly tape recorded Luckmi's phone conversations with various third persons.[4] Aware of these tape recordings at the time of mediation, the parties put the following provision in their settlement agreement:

Husband ordered to deliver all tape recordings of Wife and transcripts and all copies thereof to Linda Marshall [husband's attorney] by 5:00 p.m., five days after entry of decree. Attorneys to meet, inspect, and destroy all of same. Parties enjoined from disseminating or distributing a copy of tapes or transcripts.

▬▬▬ Taking into account that Shivi and others might urge authorities to bring criminal charges against Richard, the court concluded that this provision illegally required the parties to destroy evidence in a potential criminal proceeding brought at the instance of non-parties to the settlement agreement.[5] Section 37.09(d)(1) of

**4.** Luckmi testified that after filing for divorce, she discovered a recording device attached to a phone in the garage of the house where she and Richard lived. She testified that the device also contained a tape of her conversations with others including, her mother, Shivi, and friends. Luckmi testified that she was unaware of the recording device or the tape and that she did not give permission to any-

one to record her conversations. Luckmi also testified that when she confronted Richard, he acknowledged installing the device and making the recordings. When Richard was questioned on this topic, his counsel invoked the Fifth Amendment on Richard's behalf and instructed him not to answer.

**5.** These non-parties include Shivi. *Under the* settlement agreement, Richard agreed to re-

the Penal Code states that "a person commits an offense if the person knowing that an offense has been committed, alters, destroys, or conceals any record, document or thing with intent to impair its verity, legibility or availability as evidence in any *subsequent* investigation or official proceeding." TEX. PEN.CODE ANN. § 37.09(d)(1) (Vernon Supp.1999) (emphasis added). This statute makes it a crime to alter or destroy evidence of a crime even before the commencement of a criminal proceeding. Richard argues the provision in question is legal because it does not require *immediate* destruction of the tapes and correspondingly prohibits dissemination of them. The Penal Code does not provide a time after which a person, knowing that an offense has been committed, may legally destroy evidence. Richard contends, however, that "if they waited until the statute of limitations expired . . . the agreement would be fully and lawfully performed." We reject the notion that once the statute of limitations on the state wire tap law runs, destruction of the tapes would no longer violate § 37.09(d)(1), and, therefore, could not be characterized as an illegal act.[6] Richard's argument incorrectly assumes that the mere passage of time transforms an illegal act into a legal one. The statute of limitations is an affirmative defense; it does not bar prosecution for violation of a statute. *See Proctor v. State,* 967 S.W.2d 840, 844 (Tex.Crim.App.1998) (defense created by statute of limitations is forfeited if not asserted before the guilt/innocence stage of trial). An act prohibited by § 37.09(d)(1) does not magically become legal upon the expiration of the statute of limitations. While the running of the limitations period provides the accused with a potential defense to any prosecution for violation of the statute, it does not change the nature or character of the act. For this reason, we are unable to find that the

trial court committed a clear and prejudicial error of law by declaring the settlement agreement illegal and unenforceable based on its finding that the agreement, on its face, called for a violation of § 37.09(d)(1).

 Nevertheless, Richard argues the court abused its discretion in refusing to eliminate any illegal provision and enforce the remainder of the settlement agreement. As a general rule, where part of the consideration for an agreement is illegal, the entire agreement is void if the contract is entire and indivisible. *See Montgomery,* 930 S.W.2d at 778. The doctrine of severability is an exception that applies in circumstances in which the original consideration for the contract is legal, but incidental promises within the contract are found to be illegal. *See id.* In such a case, the court may sever the invalid provision and uphold the valid portion, provided the invalid provision does not constitute the main or essential purpose of the agreement. *See Rogers v. Wolfson,* 763 S.W.2d 922, 925 (Tex.App.—Dallas 1989, writ denied). Severability of the contract is determined by the intent of the parties as evidenced by the language in the contract. *See Montgomery,* 930 S.W.2d at 778–79; *see also McFarland v. Haby,* 589 S.W.2d 521, 524 (Tex.App.—Austin 1979, writ ref'd n.r.e.). The issue is whether the parties would have entered into the agreement absent the illegal parts. *See Rogers,* 763 S.W.2d at 925; *see also McFarland,* 589 S.W.2d at 524. Therefore, we must determine the central and essential purpose of the settlement agreement.

Richard argues that the resolution of the various issues related to divorce, not the destruction of the tapes, was the essential purpose of the settlement agreement. In contrast, Luckmi argues that the destruc-

---

lease Shivi of all claims, except for child support. However, the release was conditioned on Shivi releasing claims against Richard.

6. We note that § 37.09(d)(1) applies to the destruction of evidence that might be used in "any subsequent investigation or official proceeding" and is not limited to a violation of the state wire tap laws.

tion of the tapes was the consideration for her release of claims against Richard and, thus, was an essential purpose of the agreement. Given the structure of the settlement agreement and its interrelated terms and provisions, we cannot say that the trial court acted without reference to guiding rules and principles in concluding that the agreement is entire and indivisible. Because the court found part of the consideration for the settlement agreement illegal, it was justified in finding the entire agreement void and unenforceable. Therefore, we find the trial court did not abuse its discretion by declaring the entire agreement void and refusing to enforce it.

Lastly, Richard argues that Luckmi is estopped from questioning the agreement's validity because she accepted a $1000 cash payment under its terms. A void contract cannot be rendered enforceable by estoppel. *See Reyes v. Storage & Processors, Inc.,* 995 S.W.2d 722, 725 n. 3 (Tex.App.—San Antonio 1999, pet. filed) (holding that employee who accepted benefits of void agreement limiting worker's compensation benefits was not estopped from complaining about agreement). Thus, Luckmi is not estopped from questioning the agreement's validity. Therefore, we find no clear abuse of discretion by the trial court in setting aside the entire agreement.

### Conclusion

In conclusion, we recognize that there are competing public policy interests at stake here. On the one hand, courts are responsible for carrying out this state's policy of encouraging the peaceable resolution of disputes involving the parent-child relationship through voluntary settlement procedures. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 154.002, 154.003 (Vernon 1997). On the other hand, public policy prohibits courts from enforcing illegal contracts. *See Lewis,* 199 S.W.2d at 151; *see also Montgomery,* 930 S.W.2d at 778. Here, we are unable to find the trial court violated the public policy encouraging set-

tlements by refusing to enforce a settlement agreement that it found contained an illegal provision. Accordingly, because the trial court neither violated a duty imposed by law nor clearly abused its discretion by refusing to enter judgment on the mediated settlement agreement, we deny mandamus relief.