**Affirmed and Memorandum Opinion filed November 29, 2108.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00601-CV

## IN THE MARRIAGE OF MARY DIANE ATHERTON AND RICHARD ATHERTON

**On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2015-08954**

## M E M O R A N D U M    O P I N I O N

Diane Atherton and Richard Atherton entered into a mediated settlement agreement (MSA) in their divorce proceeding. Although Diane later moved to have the MSA set aside, the trial court entered judgment consistent with the terms of the MSA.[1] In three issues, Diane complains that the trial court abused its discretion by (1) refusing to hear evidence on Diane's claim of fraud; (2) refusing to invalidate the

---

[1] Because the parties have the same last name, we will use their first names to avoid confusion.

MSA that Diane claims was procured by fraud; and (3) in the alternative, entering judgment on an MSA that Diane claims is ambiguous, thus rendering it impossible to enforce. Because the MSA complies with the requirements of the Texas Family Code and we find no merit in Diane's appellate complaints, we affirm.

*Background*

Diane and Richard were married in 1976. Diane filed her petition for divorce in 2015, and Richard counter-petitioned.[2] The parties attended mediation on May 6, 2016, and entered into a mediated settlement agreement.

On September 20, 2016, Diane filed a motion to set aside the MSA and, in the alternative, a motion for new trial. Diane contended that the MSA should be set aside because Richard had breached the MSA and committed fraud by (1) taking items from the house, which were specifically awarded to her, both before and after the mediation; (2) not paying one-half of the credit card debt; and (3) not maintaining the house, which resulted in the need for repairs that would cost $75,000. Alternatively, Diane sought a new trial because she claimed that the evidence is legally and factually sufficient to support her claim that Richard breached the MSA by taking items awarded to her. Diane swore to the facts in that motion.

After obtaining new counsel, Diane filed a motion to extend time to designate experts. Diane contended that an expert would be necessary for either a court proceeding or in a new mediation if and when the MSA was set aside. Diane asserted that she did not have sufficient financial information "to fully understand or comprehend the partition that was contemplated" in the MSA. This motion was not supported by an affidavit from either Diane or her counsel.[3]

---

[2] There were no children of the marriage.

[3] Our record contains neither a docket control order nor an order granting this motion.

Richard moved for entry of judgment on the MSA. The trial court held a hearing on Diane's motion to set aside and Richard's motion for entry of judgment on May 5, 2017. During the hearing, Diane argued that she was fraudulently induced into entering the MSA because Richard failed to disclose the value of certain assets, instead putting an "X" for the net value of those assets. Diane, however, did not raise this issue in her motion to set aside the MSA.

Exhibit B to the MSA set forth the specific assets awarded to each party and was comprised of the following five columns: (1) the description of each asset; (2) each asset's fair market value; (3) each asset's debt value, if any; (4) each asset's net value to Diane; and (5) each asset's net value to Richard. Diane complains that no numerical values were provided for certain assets in the MSA. Specifically, there are no values listed for stocks in the following companies: Kraft Heinz, Mondelez, Phillip Morris, and Altria. Instead, those stocks were shown to which party they were awarded with an "X" in either the "net value" column for Diane or the "net value" column for Richard.

The Kraft Heinz, Mondelez, and Phillip Morris stocks were awarded to Richard, while the Altria stock was awarded to Diane. Diane argued that the lack of numerical values for the stocks in those four companies rendered the MSA unenforceable. Diane also stated that her former attorney did not bring Diane's hearing impairment to the attention of the mediator, which led to Diane not being able to fully comprehend the events taking place, namely the distribution of the stocks.

Diane referenced a trial brief she had prepared on the issue of valuation and Richard's response. This trial brief was not supported by an affidavit. Though Diane had served Richard with her brief, she had not filed her brief with the court prior to the hearing. Richard filed his response to Diane's brief a week before the hearing.

3

The trial court said that it was going to allow the prove-up of the MSA, instructed the parties to file briefs on valuation, and stated it would take up the issue on submission on May 24, 2017.

In her brief filed three days after the hearing, Diane argued that Richard made material misrepresentations by participating in the deletion of the values of stocks for four different companies. Diane had prepared a spreadsheet of the inventory before mediation, but Richard had not. Therefore, the parties were working off Diane's spreadsheet to create Exhibit B. According to Diane, her spreadsheet divided the stocks equally between her and Richard. During mediation, Richard called a broker to obtain the values for the stocks for May 6, 2016 and learned that the values had increased. Instead of putting the current values on the inventory spreadsheet, the original values were "whited out," and an "X" was placed in the column of the party who was to receive the stocks. The total value of the assets each party was to receive had been listed at the bottom of the spreadsheet, but the numbers for total value were not changed with the updated value of the stocks. Diane alleged that only Richard had the current values and awarded himself the stocks of three of the companies. This brief was not supported by an affidavit.

The trial court signed the final divorce decree on May 25, 2017. Diane filed a motion for new trial, reiterating her claims that the MSA is ambiguous and that Richard committed fraud by failing to disclose the value of the stocks on May 6, 2016. The trial court signed the order awarding Richard attorney's fees and the order denying Diane's motion for new trial. This appeal followed.

*Standard of Review*

A trial court's ruling on a motion to set aside a settlement agreement is reviewed under an abuse-of-discretion standard. *Bass v. Bass*, No. 05-16-00344-CV, 2017 WL 2443128, at *2 (Tex. App.—Dallas June 5, 2017, no pet.) (mem. op.);

4

*Davis v. Davis*, 01-12-00701-CV, 2014 WL 890899, at *4 (Tex. App.—Houston [1st Dist.] Mar. 6, 2014, no pet.) (mem. op.). A trial court abuses its discretion if it acts unreasonably or in an arbitrary manner, without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *Knight v. Knight*, 301 S.W.3d 723, 728 (Tex. App.—Houston [14th Dist.] 2009, no pet).

*Analysis*

## I. No Abuse of Discretion in Considering Motions

In her first issue, Diane complains that the trial court abused its discretion by failing to hold a "hearing to resolve disputed, material facts" concerning her motion to set aside the MSA.

At the May 5, 2017 hearing, Diane's counsel argued for the first time that Richard had failed "to disclose values at the time of the MSA." Neither Diane's pleadings nor her motion to set aside the MSA included this allegation. Diane brought a copy of her trial brief to the hearing, in which she raised the valuation issue. She asserted that Richard had seen a copy of her trial brief before the hearing but admitted that she had not yet filed her brief with the court. In an amended response to Diane's motion to set aside filed a week before the hearing, Richard responded to Diane's new arguments contained in her trial brief. Diane filed her trial brief three days after the hearing.

At the hearing, the court tried to square Diane's oral argument with her filed motion, stating:

> THE COURT: It seems like most of your allegation was that . . . you have an MSA, the husband agreed to do certain things, which he has not done, as opposed to fraud.
>
> [DIANE'S COUNSEL]: Right, Judge. That's only three things. You're correct about that, but that is in the MSA. However, the more

5

important one is the failure to disclose values at the time of the MSA. That is probably the bigger—

THE COURT: Failure to disclose value.

Diane complains that the judge did not allow her to make an offer of proof:

[DIANE'S COUNSEL]: Judge, we—we have evidence that we'd like to offer as an offer of proof if we're trying this case today.

THE COURT: The only issues before the Court today is on entry, and you want to offer a proof on the entry? And generally, the only thing would be—the MSA, you already said that it didn't differ. You said y'all signed it.

[DIANE'S COUNSEL]: I'll reserve that for the motion for new trial.

It appears that, by the time of the hearing, Diane was less interested in the claims in her motion to set aside and more interested in her new claim alleging Richard's failure to disclose the stock valuations at the mediation. The trial court proceeded to hear testimony from Richard and Diane on the prove-up of the MSA. Diane complained during her testimony that the MSA should be not accepted by the trial court "because it was not fairly achieved at mediation." The trial court invited post-hearing briefs and stated that "submission would be the 24th." Neither Diane nor Richard submitted any evidence on valuation with their post-hearing briefs. Thus, Diane presented her arguments, but she failed to present any evidence on Richard's alleged failure to disclose valuation.

Because neither Diane nor Richard submitted any evidence on the valuation issue, there were no fact issues for the court to resolve. Diane's first issue is overruled.

## II. No Abuse of Discretion in Denying Diane's Motion to Set Aside the MSA

In her second issue, Diane argues that the trial court abused its discretion in

denying her motion to set aside the MSA because she was defrauded into signing it.[4]

An MSA "is binding on the parties" if it:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

Tex. Fam. Code § 6.602(b).[5] If the MSA meets these requirements, a party is entitled to judgment on the MSA "notwithstanding Rule 11, Texas Rules, or another rule of law." *Id.* § 6.602(c).

Several courts of appeals, including this court, have held that section 6.602 does not mandate enforcement of an MSA that is illegal in nature or procured by fraud, duress, coercion, or other dishonest means. *See Toler v. Sanders*, 371 S.W.3d 477, 480 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Morse v. Morse*, 349 S.W.3d 55, 56 (Tex. App.—El Paso 2010, no pet.); *Brooks*, 257 S.W.3d at 422; *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 242 (Tex. App.—Austin 2007, pet. denied); *In re Joyner*, 196 S.W.3d 883, 889 (Tex. App.—Texarkana 2006, pet. denied); *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). The Texas Supreme Court has not addressed this issue. *See Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012) ("This appeal does not involve allegations of fraud or dishonesty, and so we leave the applicability of those defenses

---

[4] There is no order denying Diane's motion to set aside the MSA. However, by signing the divorce decree based on the MSA, the trial court necessarily and implicitly denied Diane's motion.

[5] The Texas Family Code has a similar provision for mediated settlement agreements in suits involving parent-child relationships. *See* Tex. Fam. Code § 153.0071. Section 6.602 is applicable here because there are no children of the marriage. *See Brooks v. Brooks*, 257 S.W.3d 418, 421 (Tex. App.—Fort Worth 2008, pet. denied).

7

for another case.").

Diane does not assert that the MSA does not comply with the requirements found in section 6.602(b)(1)–(3). Her counsel admitted at the hearing that "the decree is consistent with the MSA relative to the terms of the MSA." Instead, Diane claims that Richard procured the MSA by fraud or dishonesty by misrepresenting or failing to disclose the values of certain assets to be divided. However, Diane never presented any evidence supporting her claim. She further argues that, although the fiduciary duty owed in a marriage does not continue when the spouses retain independent counsel in a divorce proceeding, Richard had a duty to disclose the valuations during the creation of the MSA but breached that duty. *See Boyd v. Boyd*, 67 S.W.3d 398, 405 (Tex. App.—Fort Worth 2002, no pet.).

In *Boyd*, the parties' MSA contained a provision that stated: "Each party represents that they have made a fair and reasonable disclosure to the other of the property and financial obligations known to them." *Id.* at 404. The *Boyd* court acknowledged that the fiduciary duty arising from the marital relationship does not continue when a husband and wife each retain independent professional counsel to represent them in a contested divorce proceeding. *Id.* at 405. The court held that a duty to speak existed in that case because the parties had represented to each other in the MSA that they each had disclosed the marital property known to them. *Id.* Therefore, Mr. Boyd had a duty to disclose to Mrs. Boyd a $230,000 bonus he had earned. *Id.* Diane and Richard's MSA has no similar provision. *Boyd* is inapposite.

Neither in her live petition nor in her sworn motion to set aside the MSA did Diane assert the affirmative defense of fraud in the inducement. Diane first raised Richard's failure to disclose the new value of the stock in her trial brief; however, she did not attach an affidavit or other evidence to support her new claim. Furthermore, Diane did not ask for a continuance of the hearing or file a motion in

opposition to Richard's motion to sign and enter his proposed decree of divorce.

After the completion of the evidence at the hearing, Diane's counsel advised the trial court that he wanted to make an offer of proof. The trial court responded that the only issue before the court was on the entry of the divorce decree, and counsel stated: "I'll reserve that for the motion for new trial." While Diane filed a motion for new trial, she did not attach any affidavit or other evidence to her motion. The appellate record does not show that Diane set her motion for new trial for a hearing. Indeed, Diane claims that she was not able to obtain a hearing date in "a busy Harris County Family Law courthouse" before the trial court ruled on her motion for new trial.

On this record, we conclude that the trial court did not abuse its discretion in denying Diane's motion to set aside the MSA. Diane's second issue is overruled.

## III. No Ambiguity in the MSA

In her third issue, Diane argues that the MSA is patently ambiguous because it contains conflicting provisions.

Neither party raised ambiguity in their live pleadings or their trial briefs. Whether a contract is ambiguous, however, is a question of law, and thus the parties' failure to raise the issue is not determinative. *Milner*, 361 S.W.3d at 619. If the agreement's language can be given a certain and definite meaning, the agreement is not ambiguous, and the contract is construed as a matter of law. *Apache Deepwater, LLC v. McDaniel Partners, Ltd.*, 485 S.W.3d 900, 904 (Tex. 2016). But, if the agreement is susceptible to more than one reasonable interpretation, the agreement is ambiguous, creating a fact issue on the parties' intent. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017). An ambiguity does not arise merely because the parties advance different interpretations of the agreement. *North Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 602 (Tex. 2016). For there

9

to be an ambiguity, both interpretations must be reasonable. *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 601 (Tex. 2018).

The MSA stated that certain assets marked on Exhibit B would be awarded either to Diane or to Richard.[6] Exhibit B is a two-page document attached to the MSA that sets forth the award of assets and debts to each party. As noted above, Exhibit B contains five columns, which describe each (1) asset; (2) asset's fair market value; (3) asset's debt balance, if any; (4) asset's net value to Diane; and (5) asset's net value to Richard.

Exhibit A to the MSA stated that the following property was awarded to (1) Diane: "All items on Exhibit B wherein there is a numerical value or an X in the column marked To Wife;" and (2) Richard: "All items on Exhibit B wherein there is a numerical value or an X in the column marked To Husband." Of the listed assets that do not contain a numerical value, but only an "X" in either the column "To Wife" or the column "To Husband," Diane's focus is on the value of the Kraft Heinz, Mondelez, Phillip Morris, and Altria stocks.

Diane claims that Richard obtained the then-current values of these stocks during the mediation, but did not update Exhibit B with either the values of the assets or the total value of the assets awarded to each party, so that Exhibit B still showed the pre-mediation value of the community assets at $1.6 million (less secured debt of $134,222.36), with Diane's allocation valued at $996,726.13 and Richard's allocation valued at $491,110.44.[7] Diane argues that the MSA directly concealed the

---

[6] The MSA likewise allocated various debts to either Diane or to Richard on the Debt section of Exhibit B.

[7] Diane has attached to her brief as an exhibit a copy of her inventory. However, this document does not appear in our record. We cannot consider documents attached as appendices to appellate briefs but must consider a case solely on the appellate record filed. *See In re Marriage of Farmer*, No. 14-17-00077-CV, 2018 WL 2247380, at *2 (Tex. App.—Houston [14th Dist.] May 17, 2018, pet. denied) (mem. op); *Cooper Valves, LLC v. ValvTechnologies, Inc.*, 531 S.W.3d 254, 260 n.6 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

value of certain bank accounts and corporate shares by "whiting-out" their respective numerical values on Exhibit B and marking them with merely an "X" in the relevant column. Therefore, according to Diane, the MSA cannot be interpreted to award her $996,726.13 with the change in the value of the stocks.[8]

Richard agrees that the pre-mediation values of the stocks on Exhibit B were "whited-out" and the assets were awarded to either Diane or to him by marking them with an "X." Richard, however, maintains that the updated values Diane complains about were communicated to the mediator who "took those numbers into [Diane's caucus] room." Diane disputes this claim. We need not address this dispute because the MSA is not ambiguous.

Richard contends that the MSA awarded "items" and not "values"; therefore, he claims, Exhibit B reflects the negotiations between Diane and Richard as to the allocation of certain assets. After reviewing the entire MSA, we agree that the MSA awarded the parties certain assets and debts and not a certain percentage of the community estate. Each asset is unambiguously awarded to either Diane or Richard. Therefore, we conclude that there is no internal inconsistency or ambiguity in the MSA. Diane's third issue is overruled.

*Conclusion*

Having overruled Diane's issues, we affirm the judgment of the trial court.

/s/     Martha Hill Jamison
Justice

Panel consists of Chief Justice Frost and Justices Christopher and Jamison.

---

[8] Diane argues that the difference in value of the complained-of assets was $97,042.21.

11